Lester T. ALEXANDER *v.* Loretta B. ALEXANDER

CA 86-486                                    742 S.W.2d 115

Court of Appeals of Arkansas
Division II
Opinion delivered November 18, 1987

274

*William W. Benton*, for appellant.

*Thurman Ragar, Jr.*, for appellee.

GEORGE K. CRACRAFT, Judge. Lester T. Alexander appeals from an order of the chancery court of Jefferson County denying his petition for reduction in alimony and child support payments, holding him in contempt, and ordering him confined until he brought himself into compliance with the court's previous orders. We find no error and affirm.

The parties were divorced on October 9, 1985, by a decree which directed the appellant to pay a certain amount of child support and alimony every two weeks. It also approved a property settlement agreement, in which the appellant agreed to make the payments on the home mortgage until the happening of certain events. At the time the property settlement and decree were entered, the appellant was working as a physician in the Jefferson County Comprehensive Care Center at a salary of in excess of $5000.00 per month. At all times pertinent to the issues here, the appellant was aware that his contract with the care center would expire on July 15, 1986, at which time he expected to enter into private practice, and that he expected to be, and was, married on the day after the decree was entered.

Shortly after the decree was entered, the appellant was ordered to show cause why he had not complied with that part of the order directing him to make payments on the house. The court

found that appellant had obligated himself to make those payments in the property settlement agreement and was fully aware of that obligation. However, as it had not been included in the court's order, he was not held in contempt but ordered to make those payments in the future. He failed to do so.

Subsequently, the appellant petitioned the court to relieve him of his court-ordered obligations because he was soon to enter into private practice and needed the monies he was obligated to pay for child support, alimony, and the house payments for expenses in his new venture. On May 1, 1986, the court denied his petition on finding that there had been no change in circumstances warranting such a modification. In October of 1986, the appellee again instituted contempt proceedings to compel the appellant to comply with the order with regard to child support, alimony, and payment of the house mortgage. The appellant cross-petitioned, again seeking modification of the amounts and an abatement of the obligations until he could establish himself in practice.

Despite the court's ruling on May 1, the appellant admitted he had made no mortgage payments since March 15, 1986, and had paid no alimony or child support for the months of August or September. In his defense, he testified that, since the termination of his employment with the care center on July 15, he had earned only $2000.00, all but $150.00 per month of which had gone toward the payment of overhead expenses.

The chancellor found that the appellant knew at the time he entered into the property settlement agreement and at the time the decree was entered that he would cease to be employed at the clinic on July 15, and was aware of all other facts that affected his ability to pay the amounts imposed upon him in the order and the agreement, including the fact that he would remarry the day after the decree was entered. The chancellor announced that he would deny appellant's petition to modify the agreement, determined that he was willfully in arrears on his court-ordered obligations in an amount in excess of $4000.00, held him in contempt, and ordered him confined until he brought himself in complete compliance with the orders of the court. We find no error.

Appellant first argues that the trial court erred in not modifying the decree because orders providing for maintenance

and support are always subject to modification by the application of either party on a showing of a change of circumstances. He argues that his remarriage and decrease in income both constituted bases for a reduction in his court-ordered obligations. We agree with the appellant's argument that the court does have the power to modify its decree in this regard upon a showing of change of circumstances. We do not agree, however, that it is compelled to do so in every such instance, particularly where, as here, the changes were fully anticipated at the time of the initial order.

The appellant argues that, even though he did know that those events would occur, he was unaware that there would be an inability to charge increased fees for his services. The court was not required to believe the testimony with regard to his income. Statements of his accountants were conflicting and contained a number of self-admitted errors in both calculations and information on which they were based. In any event, there was testimony from other physicians that the freeze on certain types of fees had been in effect for a period in excess of two years and was in no way unforeseen. From our review of the record, we cannot conclude that the trial court erred in refusing to modify the decree with regard to the court-ordered child support and alimony.

The appellant next contends that it was error for the court to order him coercively imprisoned under the circumstances of this case. We do not agree. The power of a chancery court to order imprisonment in contempt proceedings as punishment for violation of its orders, to coerce obedience to its orders for the benefit of its litigants, or a merger of the two, cannot be disputed. *Dennison* v. *Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974). In the present case, the order of the court was intended to coerce compliance with its previous orders. The court had a clear right to do this subject to the following limitations upon that power contained in *East* v. *East*, 148 Ark. 143, 146, 229 S.W. 5, 6 (1921):

But imprisonment is, as was said by Judge Riddick, speaking for the court in *Ex Parte Caple*, 81 Ark. 504, "only justified on the ground of wilful disobedience to the orders of the court, and, so soon as it is made to appear that

> the defendant is unable to comply with the orders of the court, he should be discharged." The imprisonment cannot be made perpetual for recalcitrancy; and when it becomes manifest that further punishment will not compel obedience, then it is the duty of the court to refrain from further punishment, otherwise it would convert the exercise of the court's power into an instrument for imprisonment for debt or would constitute imposition of unusual and cruel punishment.

This rule has also been applied in our federal courts. There it has been held that the basis for permitting a court summarily to order coercive imprisonment for recalcitrant individuals without affording the safeguards of a criminal proceeding is that the contemnors hold the keys to their prison in their pockets, in that they may purge themselves of contempt at any time. They hold that, although when confinement for civil contempt has lost its coercive force and no longer bears a reasonable relationship to the purpose for which the contemnor was committed, due process may require that the contemnor be released, this does not mean that as a matter of due process a court may not initially order the person to be confined until he complies with the court's order or meets his burden of establishing that there is no substantial likelihood that continued confinement would accomplish its coercive purpose. *See, e.g., Shillitani* v. *United States*, 384 U.S. 364 (1966); *Maggio* v. *Zeitz*, 333 U.S. 56 (1948); *In re Grand Jury Investigation*, 600 F.2d 420 (3rd Cir. 1979).

The appellant does not argue that the law is otherwise. He contends that the evidence does not establish that the noncompliance was willful but merely that it was the result of his inability to comply. We find no merit in his argument. On February 6, 1986, the court entered an order clarifying its previous order, and the property settlement on which it was based, and commanding the appellant to make the payments due on the house until certain events occurred. Although the chancellor found that the appellant was fully aware that he was required to make those payments, he did not find appellant in contempt simply because the conditions were not specifically spelled out in any written order of the court. Thereafter the appellant admitted that he paid only one-half of the house payment due for the month of March, and made no part of those payments for the months of April

through September. He further admitted that he had failed to make his court-ordered child support and alimony payments for the months of August and September. According to the record, at least until July 13, 1986, the appellant was drawing a salary in excess of $5000.00 per month. It is obvious that during that period of time he had the ability to make the payments as ordered by the court but refused to do so. The court could, and did, find that failure to be willful.

Appellant further argues that his employment with the care center ceased on July 15, after which he had entered private practice. He offered evidence that his net income for the months of July and August was approximately $150.00 per month. Although we are unable to understand much of the testimony given by appellant's accountant as to what he earned and when he earned it, he did state that appellant paid in excess of $2000.00 in overhead and expenses for the two-month period of July and August.

The chancellor was not required to believe appellant's testimony as to his indigency but, in any event, could have determined that his preference of all other creditors over his court-ordered ones constituted willful acts of disobedience of the court order. In view of the order the court entered, it is obvious to us that the chancellor did not believe appellant's testimony of his dire financial circumstances and did believe that he had the present ability to bring himself into compliance. We find no grounds for reversal of the court's order, but we are confident that due to the period of time which has now elapsed between the date that order was entered and the termination of this appeal the trial court will, before ordering further confinement, afford the appellant an opportunity to disclose his present financial abilities to pay the arrearages in one lump sum, and thus to bring himself into compliance with the court's order, and, if he does not have that ability, an opportunity to present alternative methods of purge with which he might be able to comply.

Affirmed.

COULSON and JENNINGS, JJ., agree.