Vincent MAXWELL *v.* STATE of Arkansas

00–686                                          33 S.W.3d 108

Supreme Court of Arkansas
Opinion delivered December 14, 2000

---

*Brockman, Norton & Taylor*, by: *C. Mac Norton*, for appellant.

*Sandra Y. Harris*, for appellee.

TOM GLAZE, Justice. On February 24, 1994, the Office of Child Support Enforcement Unit (OSCE), on behalf of Jozetta Halton, filed a paternity action against Vincent Maxwell. On June 6, 1995, Maxwell was adjudicated the father of Halton's child, and he was ordered to pay past and future support payable to Halton. The payments were to be made to the court's clerk, who in turn would forward payments to OCSE. The record reflects that the court had been notified that Halton had executed a contract with OCSE for non–AFDC assistance and child support enforcement, which provided that all payments collected by the clerk should be forwarded to OCSE.[1] Over five months later, on November 14, 1995, Halton and Maxwell, without notifying OCSE, entered into a joint petition whereby they agreed Maxwell would pay Halton $2,300.00 in satisfaction of all of Maxwell's past, present, or future child support obligations. The chancery court approved Halton's and Maxwell's agreed order on November 15, 1995.

After OCSE learned of the November 15 order, it filed a motion to set the order aside, stating it was never served with a copy of the parties' joint petition or agreed order. OCSE alleged that (1) Halton had assigned her right to child support to OCSE, (2) Halton and Maxwell could not bargain away their minor child's

---

[1] AFDC is an acronym for Aid to Families with Dependent Children.

right to support, and (3) Maxwell practiced fraud on the court in obtaining the November 15, 1995, agreed order. Besides temporarily abating child support and appointing an ad litem for the child, the chancellor attempted to schedule hearings in the matter, but Halton failed to show for any of them. On February 10, 1998, the chancellor ultimately entered an order finding that, although OCSE was the real party in interest, it had never been properly served with the joint petition or the November 15 order to which Halton had agreed. He found, too, that a continuing relationship existed between OCSE and Halton concerning AFDC benefits. The chancellor further found that Maxwell practiced fraud on the court in obtaining the November 15 order without giving notice to OCSE; therefore, he ruled that he retained continuing jurisdiction over the child's right to child support until the child obtained majority. Finally, the chancellor concluded that Maxwell must continue his child support payments, that he was in willful violation of the court's original June 6, 1995, order, and was in arrears in the amount of $3,539.00.

Maxwell filed an appeal from the chancellor's February 10 order, arguing that the chancellor erred in setting aside the November 15 agreed order because OCSE had no standing to challenge that order. The court of appeals, in a 5-4 decision, agreed with Maxwell and reversed the chancellor. *See Maxwell v. State*, 70 Ark. App. 249, 16 S.W.3d 293 (2000). In short, the court of appeals held the state had no standing to challenge the validity of the November 15 agreed order because no contract or assignment was shown to exist whereby Halton had assigned her right to child support to OCSE. The court of appeals also concluded Halton was not an AFDC recipient at the time the agreed order was entered, nor were AFDC arrearages owed at the time. We granted the State's petition for review of the court of appeals decision. We reverse the court of appeals' holding and affirm the chancellor's.

Maxwell spends most of his argument on appeal in an attempt to show that OCSE has *no standing* to set aside the Maxwell/Halton agreed order because OCSE failed to introduce a contract or assignment showing Halton assigned her right to child support payments to OCSE. However, he ignores Ark. R. Civ. P. 5(b)(3), which provides as follows:

> If a final judgment or decree has been entered and the court has continuing jurisdiction, service upon a party by mail shall comply with the requirements of Rule 4(d)(8)(A).

As is recognized in Rule 5(b)(3), there are cases, such as those involving the award of child support, wherein the trial court must continue its jurisdiction over the parties in order to insure the amounts are correctly established or when arrearages must be enforced. Our case of *Office of Child Support Enforcement v. Ragland*, 330 Ark. 280, 954 S.W.2d 218 (1997), offers the reader a good understanding as to when and why the court must continue personal jurisdiction over parties in these situations. In *Ragland*, OCSE filed a "Motion for Judgment" requesting a judgment in the amount of $14,000 for arrearages that had accrued on unpaid child support owed by Jimmy Ragland. OCSE obtained a default judgment in the requested amount. The judgment provided that Ragland's agent was duly served with a copy of the motion for judgment, and that no response had been filed. Ragland moved to set aside the judgment less than a month after its entry, arguing that it was void for insufficiency of service of process. OCSE responded, contending that its service was valid because it had sent the motion for judgment to Ragland via certified mail, return receipt requested, and had received the "green card" with the signature of Sandy Ragland on the "Signature — Agent" line. The trial court set aside the default judgment, finding that the service of process had been insufficient under Ark. R. Civ. P. 4(8)(d)(A), because OCSE did not comply with the rule's requirement that Ragland be served by restricted delivery.

On appeal, OCSE argued that the trial court had continuing personal jurisdiction over Ragland, and thus no new service of process was necessary in order to obtain a valid default judgment. This court agreed, and in reversing, relied on *Jones v. Jones*, 204 Ark. 654, 163 S.W.2d 528 (1942), a divorce case in which the court recognized that an alimony award should be characterized as a "continuing general decree" that continues to exist until modified by a change in the conditions of the parties. As such, in order to collect on that continuing decree, "it would not be necessary to get personal service upon [the parties involved] to carry out and enforce a continuing decree when an attempt is made to reduce the decree to a definite and certain amount." *Ragland*, 330 Ark. at 284 (quoting from *Jones*, 204 Ark. at 656). *Ragland* noted cases subse-

quent to *Jones* that reinforced the position that the chancery court has continuing personal jurisdiction over the parties to a divorce with respect to certain support or alimony matters. *See, e.g., Rice v. Rice*, 213 Ark. 981, 214 S.W.2d 235 (1948); *Schley v. Dodge*, 206 Ark. 1151, 178 S.W.2d 851 (1944).

■ Ultimately, the *Ragland* court determined that "*Jones* and its progeny suggest that an action to reduce past-due arrearages to an executable judgment is not a 'new' cause of action, but instead flows from the original . . . decree. As such, personal jurisdiction over the parties continues without the need for additional service of process." *Ragland*, 330 Ark. at 285. Likewise, we conclude that a subsequent action to reduce what is otherwise a continuing child-support obligation to a sum certain is not a "new" cause of action, but is instead a cause that "flows from the original decree."

■ In the instant case, because OCSE was a party to the original action (having filed the paternity complaint itself), it should have been considered a party to any subsequent proceedings that transpired within the course of the original action. For that reason, OCSE clearly had standing as a party and should have received notice of the filing of the joint petition and the agreed order.

The court of appeals is reversed, and the order of the chancery court is affirmed.