Edmundo ROGERS *v.* Cynthia ROGERS

CA 01-1189 and CA 01-1192 97 S.W.3d 429

Court of Appeals of Arkansas
Division I
Opinion delivered February 5, 2003

*Rogers Law Firm*, by: *Edmundo G. Rogers*; and *Bowden Law Firm, P.A.*, by: *David O. Bowden*, for appellant.

One brief only.

KAREN R. BAKER, Judge. By entry of two separate orders, the Benton County Circuit Court held appellant Edmundo Rogers in contempt for failure to pay child support and failure to pay alimony. We affirm both orders.

Cynthia Rogers and Edmundo Rogers were divorced on February 26, 2001. The decree awarded custody of the parties' three children to Cynthia and directed Edmundo to pay $1,000 per month child support and $350 per month alimony. Edmundo appealed the divorce decree and, in an unpublished opinion, we reversed and remanded based on lack of corroboration of residency. *Rogers v. Rogers*, No. CA01-790 (June 19, 2002).

While appeal No. CA01-790 was pending, the trial court issued two contempt orders. The first held Edmundo in contempt for failure to pay $1,080 in child support and ordered him jailed for fifteen days. The second held him in contempt for failure to pay $1,400 in alimony and ordered him jailed for fourteen days. Edmundo now appeals from both of those orders, the first being submitted to us as No. CA01-1189 and the second as No. CA01-1192. Because both appeals share several issues, we decide them together in this single opinion.

The first question we must address concerns the effect of our holding in No. CA01-790 on these contempt orders. Edmundo argues that our decision in that case rendered the entire divorce decree void and that he cannot be held in contempt of a void order. *See generally Martin v. State*, 162 Ark. 282, 257 S.W. 752 (1924). His reasoning is that, because we reversed the trial court's

grant of divorce for lack of corroboration of residency, the divorce was granted without jurisdiction. *See Hingle v. Hingle*, 264 Ark. 442, 572 S.W.2d 395 (1978); *Araneda v. Araneda*, 48 Ark. App. 236, 894 S.W.2d 146 (1995). Therefore, he contends that the entire order is void because a judgment entered without jurisdiction is void. *See Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998).

Edmundo's argument is based upon the flawed assumption that the trial court's lack of power to dissolve the parties' marriage rendered the court powerless to act upon matters that were incident to marriage such as custody, child support, and alimony. This assumption is in error.

A court that acts without subject-matter jurisdiction or in excess of its power produces a result that is void and cannot be enforced. *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998). Subject-matter jurisdiction is the power to hear and determine the subject matter in controversy between the parties to the suit. *Id.*

> The rule of almost universal application is that there is a distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exercised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudicate matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case. If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. If it was within the court's jurisdiction to act upon the subject matter, that action is binding until reversed or set aside.

*Banning v. State*, 22 Ark. App. 144, 149, 737 S.W.2d 167, 170 (1987) (citations omitted). Unless the trial court has no tenable nexus whatever to the claim in question, the appellate court will consider the issue of whether the claim should have been heard there to be one of propriety, which can be waived, rather than

subject-matter jurisdiction, which cannot be waived. *In re Adoption of D.J.M.*, 39 Ark. App. 116, 839 S.W.2d 535 (1992).

We reversed *Rogers v. Rogers* on the first appeal because the trial court had no authority to dissolve the parties' marriage. Marriage is a creature of statute, and dissolution of marriage is likewise a creature of statute. The trial court did not have jurisdiction to dissolve the marriage because there was no corroboration of residence as is required by statute.

However, the trial court did have authority to enter orders regarding child support and alimony. Arkansas Code Annotated sections 9-14-105(a) (Repl. 1998) and 16-13-201(a) (Repl. 1999) give chancery courts exclusive jurisdiction in all cases and matters relating to the support of minor children. *See also Granquist v. Randolph*, 326 Ark. 809, 934 S.W.2d 224 (1996); *Boren v. Boren*, 318 Ark. 378, 885 S.W.2d 852 (1994). We cannot say that the trial court had "no tenable nexus" to the issue of child support when exclusive jurisdiction of that issue is vested with that court. Regardless of the context in which a support order is entered, whether divorce, paternity, abandonment, or any other situation, a trial court has the power to enter a child-support order. We remand to the trial court rather than reversing and dismissing for lack of jurisdiction in this situation, precisely because there are often orders in place addressing separate issues, distinct and independent of the trial court's authority to dissolve the marriage. Not only was child support entered pursuant to the court's authority, but the amount of child support ordered was not challenged by Mr. Rogers on appeal.

A court's jurisdiction to grant a divorce is distinct from its jurisdiction to award child support and alimony. In *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967), the New Mexico Supreme Court held that although the parties could not be granted a divorce due to lack of proof of residency, it did not follow that provisions in the divorce decree pertaining to support were void. In *Larson v. Dunn*, 474 N.W.2d 34, 39 (N.D. 1991), the North Dakota Supreme Court declared that, "jurisdiction over the marital status and the incidences of a marriage, such as support, involve distinct and separate jurisdictional foundations."

Our case law recognizes and applies this jurisdictional distinction specifically articulated in *Heckathorn* and *Larson*. In *Adams v. Adams*, 224 Ark. 550, 274 S.W.2d 771 (1955), the trial court dismissed a divorce complaint "for want of equity" but nevertheless awarded child custody to appellee. Appellant contended that the trial court had no authority to enter a custody order, having denied appellee a divorce. The supreme court disagreed and stated:

> We held, in effect, against this contention of appellant in *Horton v. Horton*, 75 Ark. 22, 86 S.W. 824: "Though a chancery court denies a divorce, it may recognize an existing separation by awarding custody of the infant children during one month to the husband and during the following month to the wife, *and in such case may award the wife a monthly allowance for support and maintenance of the children*. . . .

*Id.* at 552, 274 S.W.2d at 772. (Emphasis added.) In *Hadden v. Hadden*, 320 Ark. 480, 897 S.W.2d 568 (1995), the trial court denied appellee's petition for divorce but nevertheless entered alimony and child-support orders, stating:

> In *Mason v. Mason*, 248 Ark. 1177, 455 S.W.2d 851 (1970), a divorce decree was denied by the Chancellor due to failure of the plaintiff to present corroboration of grounds. The Chancellor nonetheless retained jurisdiction to enter a support order in favor of Mrs. Mason and held Mr. Mason in contempt for violation of it. We affirmed. . . .

*Id.* at 482, 897 S.W.2d at 569.

Our supreme court has recognized a trial court's power and duty to enter orders regarding support of individuals regardless of its power to terminate the marriage. In *Gabler v. Gabler*, 209 Ark. 459, 462-63, 190 S.W.2d 975, 977 (1945), the supreme court reversed a trial court's grant of a divorce for lack of corroboration of grounds, and simultaneously held that the chancery court should have awarded alimony, stating: "Since there was no corroboration, the divorce should have been denied. Notwithstanding the denial of the divorce, the chancery court had jurisdiction, and we have on appeal, to award suit money and alimony to the wife." Accordingly, the appellate court entered an order for alimony

while reversing and dismissing the divorce action. *See also Kesterson v. Kesterson*, 21 Ark. App. 287, 731 S.W.2d 786 (1987) (holding that an award of alimony will lie independent of a divorce proceeding, and affirming the award of spousal support while reversing the grant of divorce).

■ As these cases illustrate, the trial court in this case had jurisdiction to enter and enforce the child-support and alimony provisions of the decree, despite the trial court's lack of jurisdiction to grant a divorce. This principle embodies sound public policy. Support awards are often crucial to the well-being of the children and spouses who receive them, and they should not be rendered unenforceable merely because of a technical failure to prove entitlement to a divorce.

■ We next address whether the contempt orders were unenforceable because, at the time each was entered, Edmundo had filed a $30,000 supersedeas bond. Generally, a trial court has continuing jurisdiction over support orders. *See generally Maxwell v. State*, 343 Ark. 154, 33 S.W.3d 108 (2000); *Slusher v. Slusher*, 73 Ark. App. 303, 43 S.W.3d 189 (2001). However, Edmundo contends that the court's continuing jurisdiction ceased when the supersedeas was filed.

■ The function of a supersedeas is to stay the execution of a judgment and maintain the status quo pending the period the judgment is superseded. *Searcy Steel Co. v. Mercantile Bank of Jonesboro*, 19 Ark. App. 220, 719 S.W.2d 277 (1986). The effect of a supersedeas on a support obligation was addressed by the supreme court in *Goodin v. Goodin*, 240 Ark. 541, 400 S.W.2d 665 (1966). There, the appellant was ordered to make monthly child-support and alimony payments. He obtained a writ of supersedeas and failed to make payments as required by the decree. The appellee filed a motion for contempt, which appellant resisted on the ground that he had filed the supersedeas. The chancellor doubted that a support order could be superseded, but he held the contempt proceeding in abeyance to allow the appellant to apply to the supreme court for a stay. On application for the stay, the supreme court recognized that, while a writ of supersedeas is

obtainable as a matter of course with respect to a judgment for contract or tort damages,

> other considerations must be taken into account with respect to a decree for alimony or child support. Despite the dissolution of the marriage the husband may still be responsible for the support of his former wife and his children. Those dependents are not to be left penniless during the pendency of an appeal.

> We have issued a number of per curiam orders sustaining the chancery court's continuing power to enforce its decrees for support or child custody despite the pendency of an appeal.

*Id.* at 542, 400 S.W.2d at 666-67. Edmundo attempts to distinguish *Goodin* on the basis that, unlike the appellant there, he has not totally failed to make support payments and further that Cynthia Rogers was not left penniless but was employed, making eleven dollars per hour, and had acquired a new swimming pool and a new car.

■ ■ We uphold the trial court's decision to enforce the support awards in spite of the supersedeas. *Goodin* clearly expressed the idea that support orders may not be superseded as a matter of right. The rationale behind such a holding is clear. A parent should not be able to avoid court-ordered support payments merely by filing an appeal. Regularity of payment is a key feature of support payments, the children's or spouse's needs being continuing in nature, and it is no substitute to have a lump-sum payment made after the appeal has been prosecuted.[1] Further, the factual distinctions urged by Edmundo between this case and *Goodin* are not persuasive. Although Edmundo has made some child-support payments, he has not made them regularly; he has made no alimony payments. Moreover, Cynthia testified that she had been in financial straits, that her cable and gas had been turned off, and that she had three children in daycare at the rate of about $800 per month. She explained that her mother lent her the money to put a down payment on a 1996 Volvo and that the backyard swimming pool was a gift from a relative. Thus, the trial

---

[1] We also note that Rule 62(d) of the Arkansas Rules of Civil Procedure provides that, when an appeal is taken, the appellant, by giving a supersedeas bond, may obtain a stay "except as to child custody orders and similar orders."

court was faced with a credibility issue as to Cynthia's financial condition and was entitled to believe that Cynthia was in need of the support payments. We defer to the trial court's superior position to judge the credibility of the witnesses. *Alfano v. Alfano*, 77 Ark. App. 62, 72 S.W.3d 104 (2002).

On July 27, 2001, our supreme court stayed enforcement of the child-support order, and Edmundo argues that this implicitly recognized that the order was unenforceable. We disagree. Since there is no requirement that a likelihood of success on appeal be shown before a stay of an order may be granted, there can be no implication that the grant of a stay indicates the court's inclination to reverse or set aside an order. Furthermore, even if the granting of a stay could be interpreted as such, the inaccuracies in Edmundo's application for the stay would invalidate any such implication.

When the trial court set the July 5, 2001 show-cause hearing, Edmundo filed a petition in the Arkansas Supreme Court for a writ of prohibition or mandamus or a stay, arguing that the trial court, in seeking to hold him in contempt, was acting in excess of its jurisdiction, given that he had posted a supersedeas bond. The supreme court denied the petition. When Edmundo was later incarcerated for contempt, he filed a petition for an emergency writ of habeas corpus with the supreme court. His petition stated that he was continuing to pay child support of $174 per week pursuant to a temporary support order but that he had been incarcerated for failure to pay the "enhanced" amount of $1,000 per month. He stated that he had filed the supersedeas bond to cover the difference between the temporary amount and the enhanced amount and that he intended to appeal the trial court's decision to award the enhanced amount. The supreme court granted Edmundo's petition and, by its mandate, released Edmundo from jail; required him to continue paying the child support awarded under the temporary decree; required him to keep the supersedeas bond in force; and stayed the trial court's judgment for "enhanced" child support.

We disagree that the stay invalidated the trial court's contempt orders. First, Edmundo's petition indicated that he was

regularly paying $174 per week in child support and that he was appealing the difference of $246 per month between that amount and the $1,000 per month ordered at the time the divorce decree was entered. Both of those representations were false. Edmundo's payments were irregular at best, and he never challenged the amount of the child-support award on appeal. Second, the supreme court mandate was issued on July 27, several days after the trial court's first entry of a contempt order on July 19, and stayed the proceedings prospectively. Under these circumstances, we decline to hold that the stay invalidated the contempt order for failure to pay child support.[2]

Next, we address Edmundo's argument that a "contempt finding by a biased judge should not stand." Edmundo argues that the judge was rude and contemptuous to him, prematurely indicated she would grant a divorce before appellant presented his case, held the parties' premarital agreement unconscionable, granted a divorce on the nonexistent ground of "spousal abuse," received an ex parte communication from Cynthia Rogers, and generally placed herself in league with Cynthia. He filed a motion for recusal on July 2, 2001, but at the July 5 hearing, the trial judge stated that she had no ill will toward either of the parties and saw no reason to recuse.

The decision of whether to recuse is within the trial court's discretion, and it will not be reversed absent an abuse of discretion. *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). There exists a presumption that a judge is impartial. *See id.* The burden is on the party seeking disqualification to show bias or prejudice. *Id.* To decide whether there has been an abuse of discretion, we review the record to see if prejudice or bias was exhibited. *Id.*

Nothing in the records of the divorce proceedings or of the contempt proceedings supports Edmundo's contention that the contempt orders should be set aside for judicial bias. Most of Edmundo's points relate to matters that allegedly

[2] The supreme court's July 27 mandate applied only to child support. It later refused to enter a stay of Edmundo's alimony obligation.

occurred during the divorce proceeding. The record of the divorce proceeding, having already been filed with the appellate court in an earlier appeal, is a public record which need not be incorporated into the record on the second appeal. *See Drymon v. State*, 327 Ark. 375, 938 S.W.2d 825 (1997). However, an appellant is required to abstract all pertinent portions of the record from the first appeal, *id.*, which Edmundo failed to do. Thus, although we have reviewed the record of the divorce proceeding and find no judicial bias, we confine our discussion here to bias alleged to have occurred in the contempt proceedings. The only specific allegation of bias involves Cynthia's alleged ex parte communication with the trial judge. The communication referred to was addressed by Cynthia to her attorney, the circuit clerk, and the trial judge. However, the judge's office immediately forwarded a letter to Edmundo's attorney, enclosing a copy of the communication.

We see no indication of judicial bias in the court's receipt of Cynthia's letter or in any other part of the contempt proceedings. As the supreme court stated in *Irvin v. State, supra*:

> A trial judge's development of opinions, biases, or prejudices during a trial do not make the trial judge so biased as to require that he or she recuse from further proceedings in the case. Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of prejudice by the trial judge which will cause us to reverse his or her refusal to recuse. The mere fact of adverse rulings is not enough to demonstrate bias. Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge.

*Id.* at 550, 49 S.W.3d at 640-41 (citations omitted).

The records before us show no objective demonstration of the trial judge's prejudice nor any communication of prejudice by the judge. We therefore hold that no bias or prejudice has been demonstrated that would affect the enforcement of Edmundo's child-support and alimony obligations.

The next issue is presented in Edmundo's brief as follows: "The Court May Look Behind The Order Of Contempt." He claims first under this point that his actions were not disruptive of the court's docket or court's efficiency. However, a trial court may hold a party in contempt for failure to obey a support order. *See Alexander v. Alexander*, 22 Ark. App. 273, 742 S.W.2d 115 (1987); Ark. Code Ann. § 9–14–234(j) (Repl. 2002). Edmundo also claims that the property-settlement agreement that formed the basis for the support decree was obtained by fraud. There is simply no evidence of this in the records before us. Therefore, we find no error on this point.

We turn now to Edmundo's contention that he did not have the ability to pay the support awards. Inability to pay is a defense to a contempt citation, unless the inability is due to action or inaction on the part of the appellant. *See Brown v. Brown*, 305 Ark. 493, 809 S.W.2d 808 (1991). Our standard of review on this issue is that we will not reverse a trial court's finding of civil contempt unless that finding is against the preponderance of the evidence. *Id.*

Edmundo testified that he did not have the ability to pay the amount ordered in the decree. He explained that, in his law practice, he sometimes had access to money but could go for months without receiving any. No other evidence was presented as to Edmundo's income during the relevant period.

As the trial court found, Edmundo's proof at trial was conclusory rather than specific, consisting of little more than his own declaration that he could not pay the amount owed. That being the case, we decline to hold that the trial court's finding on this point was clearly against the preponderance of the evidence. Edmundo argues further, however, that Cynthia had the burden of showing that he was able to pay the amount owed. We disagree. Although we have found no Arkansas case directly on point, cases from other jurisdictions hold that a contemnor has the burden of proving inability to pay. *See, e.g., Gebetsberger v. East*, 627 So.2d 823 (Miss. 1993); *Coleman v. Coleman*, 664 P.2d 1155 (Utah 1983). This is logical because, in most cases, all of the items of proof needed to prove ability or inability to pay are in the hands of

the contemnor. Further, a defendant has the burden of proving affirmative defenses. *See Baumgartner v. Rogers*, 233 Ark. 387, 345 S.W.2d 476 (1961). We therefore find no error on this point.

Finally, Edmundo makes two arguments pertaining only to the order regarding child support. First, he claims that he has been held in contempt of an order too indefinite to be enforced. He bases this argument on the fact that, at the July 5 show cause hearing, the trial court mistakenly ordered him to pay $2,080 in past-due child support rather than $1,080. This amount was corrected by the court on July 19.

 Before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties imposed on him. *See Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995). We find no problem with indefiniteness in this case. First, the order Edmundo was found to have violated was not indefinite in any way; it plainly stated that Edmundo was obligated to pay child support of $1,000 per month. Second, the trial court's original miscalculation of the amount past due did not prejudice Edmundo. In fact, the miscalculation resulted in his owing less than had been ordered. Finally, there is no evidence that Edmundo tendered any amount at all to cover the past-due support. This is not a case of Edmundo misunderstanding his obligation due to an indefinite order; it is simply a case of his not paying the past-due child support at all.

The second issue pertaining solely to the child-support order concerns the amount of past-due support awarded. Edmundo contends that, because Cynthia filed her contempt petition on May 2, 2001, approximately two months after the divorce decree was entered, the trial court was prohibited from awarding back support for any months other than the two intervening months of March and April. Instead, the trial court, at the July 5 hearing, awarded back support for March, April, May, and June, *i.e.*, all support due at the time of the hearing.

Arkansas Code Annotated sections 9-14-236(b) and (c) (Repl. 2002), read as follows:

> (b) In any action involving the support of any minor child or children, the moving party shall be entitled to recover the full

amount of accrued child support arrearages from the date of the initial support order *until the filing of the action.* (Emphasis added.)

(c) Any action filed pursuant to subsection (b) of this section may be brought at any time up to and including five (5) years beyond the date the child for whose benefit the initial support order was entered reaches the age of eighteen (18) years.

Edmundo contends that the italicized portion of subsection (b) means that accrued support may not be awarded beyond the date that the action to recover it was filed. We disagree.

The purpose of a statute must be considered when construing it. *Stover v. Stover,* 287 Ark. 116, 696 S.W.2d 750 (1985). Section 9-14-236(b), together with subsection (c), is a statute-of-limitations provision. In 1989, the legislature enacted a ten-year limitations period for the recovery of delinquent child support. Act 525 of 1989. However, when the supreme court limited the application of the ten-year period in *Sullivan v. Edens,* 304 Ark. 133, 801 S.W.2d 32 (1990), the legislature enacted sections 9-14-236(b) and (c) to broaden the statute of limitations. These sections now declare that the limitations period begins with the initial support order and ends when the child turns twenty-three. *See Branch v. Carter,* 326 Ark. 748, 933 S.W.2d 806 (1996). Thus, the "filing" date referred to in subsection (b) is to be read in connection with the requirement of subsection (c) that an action for accrued support be filed by the child's twenty-third birthday. When we consider the purpose of the statute, we believe that the legislature intended no "stop-date" on recovery other than a child's twenty-third birthday.

For the reasons stated, we affirm the two contempt orders entered by the trial court.

BIRD and VAUGHT, JJ., agree.