Cynthia ROGERS *v.* Edmundo ROGERS

CA 03-1411                                        205 S.W.3d 856

Court of Appeals of Arkansas
Opinion delivered March 23, 2005
[Rehearing denied June 22, 2005.]

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans*, for appellant.

*Darrell F. Brown & Associates, P.A.*, by: *Darrell F. Brown*, for appellee.

KAREN R. BAKER, Judge. This is the fifth appeal in this divorce case. The first four appeals were brought by appellee Edmundo Rogers, an attorney in northwest Arkansas. This appeal is brought by Cynthia Rogers, and she asserts four points of error. We reverse and remand on all points.

Cynthia and Edmundo were married on March 5, 1993. On September 8, 2000, Cynthia filed for divorce on the ground of general indignities following an incident in which Edmundo lunged at her through the window of her car, grabbed her neck, pushed her against the seat, and strangled her to the point that she could not breathe and felt as if she were choking. In her divorce complaint, she sought custody of the parties' three children, child support, alimony, and division of property. Edmundo answered and pleaded, *inter alia*, the defense of condonation. Shortly thereafter, the trial court entered a temporary child-support order, directing Edmundo to pay $174 per week.

The divorce hearing was scheduled for January 25, 2001. A few days before, Cynthia and Edmundo had executed two docu-

ments titled Partial Stipulated Property Agreements. One of the agreements divided ownership of approximately fourteen items of property. The other awarded each party one vehicle and provided, *inter alia*, that Cynthia would receive child support of $1,000 per month, alimony of $350 per month for twelve months, and a $5,000 lump sum by January 29, 2001.

The trial court entered a divorce decree on February 26, 2001, granting Cynthia a divorce on grounds of "spousal abuse," awarding her custody of the children, and, as provided in the Partial Stipulated Property Agreements, awarding her child support of $1,000 per month along with alimony of $350 per month for twelve months, plus a $5,000 lump sum. As for property division, the chancellor refused to enforce a premarital agreement that the parties had entered into, ruling that it was discarded when the parties entered into the Partial Stipulated Property Agreements and that it was, in any event, unconscionable. As a result, the chancellor divided approximately eighteen items of property that were not mentioned in the Partial Stipulations, including various bank accounts, accounts receivable, vehicles, and realty.

Edmundo appealed from the divorce decree, asserting numerous grounds for reversal, including that Cynthia's residency in Arkansas for the required amount of time had not been corroborated; that the trial judge erred in awarding a divorce on grounds of spousal abuse; and that the trial court erred in refusing to enforce the premarital agreement. In our decision in that case, *Rogers v. Rogers*, CA01-790 (June 19, 2002) (not designated for publication) (*Rogers I*), we reversed and remanded on the basis that there had been no corroboration of Cynthia's residency in Arkansas for the sixty days preceding the filing of her complaint. It is important to note at this point that our decision in *Rogers I* was not a vacation or dismissal of the trial court's entire order. *See Rogers v. Rogers*, 80 Ark. App. 430, 97 S.W.3d 429 (2003). The trial court had no jurisdiction to grant the divorce in the absence of corroboration of residency. An action for divorce is in the nature of a proceeding in rem or, more accurately, a proceeding quasi in rem. 24 Am.Jur.2d *Divorce and Separation* § 7 (1983). The res — or thing — on which the judgment operates is the marital status of the parties. *Id.* The satisfaction of statutory residence requirement is essential to the court's jurisdiction over the marital status of the parties. *See generally* 24 Am.Jur.2d *Divorce and Separation* § 238 (1983). By statute, corroboration of proof of residence may not be waived.

Ark. Code Ann. § 9-12-306 (Repl.1993). Therefore, in the context of the divorce case, the trial court generally had the jurisdiction to decide the issues presented in the divorce, *see generally Banning v. State*, 22 Ark. App. 144, 737 S.W.2d 167 (1987), but no power to dissolve the marriage. Therefore, based on the holdings in *Hingle v. Hingle*, 264 Ark. 442, 572 S.W.2d 395 (1978), and *Araneda v. Araneda*, 48 Ark. App. 236, 894 S.W.2d 146 (1995), we remanded the case to the trial court.

Our opinion in *Rogers I* also addressed Edmundo's arguments that the premarital agreement should be enforced and that the chancellor erred in finding grounds for divorce. We reversed the trial court's refusal to enforce the premarital agreement, but on the issue of grounds, we stated the following:

> Mr. Rogers correctly points out that the term "spousal abuse" is not listed as a ground for divorce in Ark. Code Ann. § 9-12-301 (Repl. 2002). However, we believe that the trial judge's use of the term is, under the facts of this case, equivalent to "cruel and barbarous treatment as to endanger the life of another," which is listed as a ground under subsection (3) of section 9-12-301. The choking incident provides sufficient proof of cruel and barbarous treatment that endangered Mrs. Rogers's life, and Mr. Rogers was well aware that she was relying on that incident as the basis of her grounds for divorce. Therefore we find no reversible error on this point. However, we reiterate that divorce is a creature of statute and can only be granted when statutory grounds have been proven and corroborated.

*Rogers I*, slip op. at 4.

While the appeal in *Rogers I* was pending, Edmundo was held in contempt on two occasions for failure to pay child support and failure to pay alimony as ordered by the divorce decree. He appealed from those orders and argued, *inter alia*, that, because Cynthia's residency in Arkansas had not been corroborated as the law required, the trial court had no jurisdiction to grant the divorce and thus no jurisdiction to hold him in contempt of the divorce decree. We rejected his argument in *Rogers v. Rogers*, 80 Ark. App. 430, 97 S.W.3d 429 (2003) (*Rogers II*) (consolidating the two appeals), and held that, despite our reversal in *Rogers I* for lack of corroboration of residency, the trial court had independent

jurisdiction to enter and enforce the alimony and child-support awards. Edmundo's contempt citations were therefore affirmed.[1]

The present appeal concerns events that transpired in the trial court following our reversal and remand in *Rogers I*. On November 14, 2002, the trial court heard the testimony of Cynthia's daughter, Amber Tharp, who stated that Cynthia had been a resident of the state for nine or ten years before filing for divorce and had lived in the state for three months prior to the entry of the divorce decree. Thus, the corroborative proof that had been found lacking in *Rogers I* was supplied. Following Amber's testimony, Cynthia, who was representing herself, rested her case, believing that Amber's testimony was the only subject of the hearing. To her understandable surprise, Judge John Scott[2] informed her that he intended to "have a brand new, complete and total divorce trial as if the first one had never happened." To accommodate Cynthia, Judge Scott continued the case until April 10, 2003.

One day following the above hearing, the court issued an order stating that Cynthia's residency had been corroborated and that the issues concerning condonation, custody, support, and the premarital agreement would be litigated at the next hearing. However, in an apparent reversal of its declaration that a completely new trial would be held, the court stated:

> Upon reconsideration by the Court, the Court finds that the decision by the Arkansas Court of Appeals [in *Rogers I*] held that sufficient grounds for divorce were proven by [Cynthia], and grounds for divorce will not be relitigated upon remand.

The April 10 hearing was held, and grounds were not relitigated. On May 5, 2003, following the hearing, the trial court entered a divorce decree providing that: 1) Cynthia's residency in Arkansas for the required amount of time was established and corroborated; 2) Cynthia would be granted a divorce on grounds of general indignities; 3) custody of the children would be awarded

---

[1] *Rogers III*, which also involved orders entered while *Rogers I* was pending, is not relevant to the issues in this appeal, except insofar as it reaffirmed Edmundo's contempt citation for failure to pay alimony. *Rogers v. Rogers*, CA02-699 (Aug. 27, 2003) (not designated for publication).

[2] Judge Scott was assigned the case after chancellor Xollie Duncan recused from further participation on October 30, 2002.

to Cynthia (uncontested); 4) the premarital agreement would be enforced and the property divided in accordance with paragraph 12 of the agreement, which mandates arbitration; 5) the Partial Stipulated Property Agreements would be given no effect because to do so would violate Ark R. Evid. 408's prohibition against admission of offers of compromise; 6) no alimony would be awarded because the premarital agreement provided that the right to alimony would be forfeited "except under conditions of adultery, mental or physical abuse, or abandonment"; 7) child support would be set at $300 per month; 8) Edmundo owed $7,044 in past due support, based on the $174 per week established in the 2000 temporary order. Cynthia filed a motion to reconsider, which was denied, and this appeal followed. She now argues that the trial court erred in 1) granting her a divorce on the grounds of general indignities; 2) applying Ark. R. Evid. 408 to exclude consideration of the Partial Stipulated Property Agreements; 3) setting child support at $300 per month; and 4) refusing to award her alimony.

### Threshold Issue — Jurisdiction

We first address Edmundo's argument that there was no conclusive testimony by Amber Tharp corroborating Cynthia's residency for the required periods and, therefore, the trial court still lacked jurisdiction to grant the divorce. Arkansas Code Annotated section 9-12-307(a)(1)(A) (Repl. 2002) provides that:

> (a) To obtain a divorce, the plaintiff must prove, but need not allege, in addition to a legal cause of divorce:
>
> (1)(A) A residence in the state by either the plaintiff or defendant for sixty (60) days next before the commencement of the action and a residence in the state for three (3) full months before the final judgment granting the decree of divorce.

Residency must be proven and corroborated in every instance. Ark. Code Ann. § 9-12-306(c)(1) (Repl. 2002); *Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989). The question of whether residency has been proven and corroborated is jurisdictional. *See Hingle v. Hingle, supra.*

At the original divorce hearing on January 25, 2001, Cynthia testified that she had lived in Benton County, Arkansas, since 1991, which established her residency for both of the required statutory periods. At that same hearing, Amber Tharp corroborated that Cynthia had lived in Benton County, Arkansas, for three

months preceding the hearing. However, she did not corroborate Cynthia's residency for the sixty days prior to the filing of the complaint. Our reversal in *Rogers I* was based on this lack of corroboration.

Following the remand, the trial court heard Amber's testimony that Cynthia had been a resident of Benton County, Arkansas, for nine or ten years before filing for divorce. Amber also reiterated her previous testimony that Cynthia was a resident of Benton County for at least three months preceding the entry of the divorce decree. Thus, the necessary corroboration was supplied. We therefore conclude that trial court had jurisdiction to grant the divorce.

### Issue #1 — Grounds for Divorce

Arkansas Code Annotated section 9-12-301 (Repl. 2002) sets out the grounds for divorce in Arkansas. Included among them are cruel and barbarous treatment as to endanger the life of the other, and indignities to the person of the other as shall render his or her condition intolerable. Ark. Code Ann. § 9-12-301(3) (Repl. 2002). When Cynthia filed her complaint for divorce on September 8, 2000, she asserted indignities as grounds. At the divorce hearing on January 25, 2001, she offered proof of Edmundo's assault on her, whereupon the chancellor granted the divorce on grounds of "spousal abuse." In *Rogers I*, we recognized that no such grounds existed under Arkansas law. However, we held that the term "spousal abuse" was, under the circumstances, equivalent to the recognized ground of cruel and barbarous treatment. We therefore stated that "we find no reversible error on this point." *Rogers I* at slip op. 4.

Upon remand, the trial court changed the grounds for divorce to general indignities. Cynthia argues that this was error because our holding in *Rogers I*, affirming the grounds of cruel and barbarous treatment, was the law of the case. She urges this argument in order to avoid the application of the premarital agreement, which provides that the right to petition the arbitration committee for alimony is forfeited except under conditions of adultery, mental or physical abuse, and/or abandonment.[3]

---

[3] We offer no opinion as to whether this provision of the premarital agreement would in fact preclude an award of alimony under the circumstances of this case, regardless of the grounds upon which the divorce is granted.

As a preliminary matter, Edmundo contends that Cynthia is raising this argument for the first time on appeal. It is true that Cynthia made no argument pertaining to grounds or law of the case either before or during the April 10 divorce hearing. However, she would have had no reason to do so. The trial judge unequivocally stated in his order following the November 14, 2002 hearing that grounds were established in *Rogers I* and would not be relitigated. In yet another order entered before the final hearing, the trial judge listed the issues that would be tried at the hearing; the subject of grounds was not listed. Finally, at the hearing itself, the judge seemed to concur with Cynthia's assessment that "the Supreme Court [sic] did not overrule grounds," and in fact stated that "*Rogers I* ruled that the plaintiff had shown sufficient grounds for divorce." Only when the May 5, 2003, divorce decree was entered was there as any indication that the divorce would be granted on grounds of general indignities. Cynthia's post-decree motion for reconsideration asked the court to reconsider its order "to grant her divorce based on general indignities." We therefore hold that, under these circumstances, her argument has been preserved for review.

Edmundo also contends that Cynthia's argument should be procedurally barred because she invited the trial court's alleged error. He is referring to the fact that, in her complaint for divorce filed on September 8, 2000, Cynthia asserted indignities as grounds. However, the evidence presented at the original divorce hearing focused on the choking incident. As a result, the chancellor granted the divorce on grounds of "spousal abuse," which we affirmed in *Rogers I* after interpreting the term to mean cruel and barbarous treatment. Once those grounds were established and affirmed on appeal, Cynthia's allegations in her complaint were of no moment. Moreover, because the trial judge assured the parties that grounds would not be relitigated, it was not incumbent upon Cynthia to amend her complaint to change the grounds.

Turning to the merits of the issue, "the venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal." *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 970, 69 S.W.3d 383, 388 (2002). The doctrine serves to effectuate efficiency and finality in the judicial process. *Id.* It provides that a decision of an appellate court establishes the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review. *See Jones*

*v. Double "D" Props., Inc.*, 357 Ark. 148, 161 S.W.3d 839 (2004); *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001).

■ The question before us is whether we conclusively decided in *Rogers I* that grounds for divorce had been established as cruel and barbarous treatment. We agree with Cynthia that we did. One of Edmundo's arguments for reversal in *Rogers I* was that there was not sufficient proof of grounds. We addressed that argument and expressly stated that we found no reversible error on that point. Thus, we affirmed the grounds established at the trial level, and the alteration of those grounds upon remand violated the law-of-the-case doctrine.

We also reiterate that our decision in *Rogers I* was not a vacation or dismissal of the chancellor's decree; it was a reversal and remand on certain points. We did not disturb the chancellor's determination of grounds and certainly did not hold that the chancellor had no jurisdiction to rule on grounds.

### Issue #2 — Application of Ark. R. Evid. 408

This issue concerns the two Partial Stipulated Property Agreements, one of which provided, *inter alia*, that Cynthia would receive child support of $1,000 per month, alimony of $350 per month for twelve months, and a $5,000 lump sum by January 29, 2001. The original chancellor gave effect to the Partial Stipulations and in fact held that they revoked the premarital agreement.

In *Rogers I*, Edmundo argued that the Partial Stipulations did not revoke the premarital agreement but were at most amendments. We agreed and said that "the stipulated agreements' division of a small portion of the parties' property, much of which was individually possessed or owned to begin with, is not so inconsistent as to revoke the Premarital Agreement in its entirety." *Rogers I*, slip op. at 8. Upon remand, Edmundo took a different approach and objected to the trial court's consideration of the Partial Stipulations, claiming that they violated Ark. R. Evid. 408. That rule reads:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other

> claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

After the April 10 hearing, the court ruled that the Partial Stipulations should be denied admission into evidence based on Rule 408. Cynthia now appeals from that ruling.

The rationale of Rule 408 is based upon the grounds of promotion of the public policy favoring the compromise and settlement of disputes. *Wal-Mart Stores, Inc. v. Londagin*, 344 Ark. 26, 37 S.W.3d 620 (2001). Its purpose is to promote complete candor between the parties to settlement negotiations. *Id.* We do not believe that the trial court's exclusion of the Partial Stipulations in this case served the purpose of the rule. In fact, their exclusion was less an evidentiary ruling than a substantive one, undoing the Stipulations rather than merely excluding them from evidence.

The Partial Stipulations were contracts executed in settlement of a portion of the parties' property division; they were in fact incorporated into the original divorce decree and accepted by the chancellor as a partial division of property. Where an offer of compromise is accepted and a contract is created but later repudiated, the repudiating party cannot claim the benefit of the Rule 408 exclusion. *See* 2 John W. Strong, *McCormick on Evidence* § 266 at 198 (4th ed. 1992). Further, Rule 408 does not bar consideration of compromise agreements that have a substantive significance of their own. *See* 2 Christopher Mueller and Laird Kirkpatrick, *Federal Evidence* § 138 at 107–08 (2d ed. 1994).[4] The shield provided by the rule does not extend to the protection of those who repudiate those agreements, the making of which the rule is designed to encourage. John W. Strong, *McCormick on Evidence, supra.*

The Partial Stipulations in this case were fully executed agreements, incorporated into a court decree. They were offered so that the trial court could enforce them and not for the purpose

---

[4] Referring to Federal Rule 408, which is virtually identical to our rule.

of "proving liability for, invalidity of, or amount of the claim" in the words of Rule 408. We therefore hold that they should have been enforced by the trial court.

Edmundo makes several arguments in support of the trial court's ruling on this point. Most of them appear to be based on his contention that we "vacated" the decree in *Rogers I*. That argument has been sufficiently addressed and rejected in the preceding pages of this opinion. Further, it misses the point of this issue, which is whether Rule 408 was properly applied.

Edmundo also advances arguments concerning Cynthia's impeached testimony that the parties had previously "torn up" the premarital agreement, Cynthia's alleged breach of the Partial Stipulations, and his inability to pay what was called for under the Stipulations. These arguments do not address the issue of Rule 408 nor do they offer any logical reason for the court's refusal to enforce the Partial Stipulations. We therefore reverse and remand for the trial court to enforce the Partial Stipulations.

### Issue #3 — Child Support

Child support orders are reviewed *de novo. Allen v. Allen*, 82 Ark. App. 42, 110 S.W.3d 772 (2003). When the amount of child support is at issue, the appellate court will not reverse absent an abuse of discretion. *Id.*

The trial court heard testimony regarding Edmundo's financial situation from both Edmundo and his accountant, who testified that, despite the fact that Edmundo was working as an attorney, he made only about $6,000 in 2002. Based on that testimony, the court established $300 per month as the amount of child support, which is the amount Edmundo would owe if he were working a minimum-wage job. The court also ruled that Edmundo owed a $7,044 child-support arrearage based on the $174 per week established in the 2000 temporary order. Cynthia argues that the trial court erred in its child-support rulings because the $1,000-per-month awarded in the original decree was law of the case. We agree.

*Rogers II* expressly recognized the chancellor's power to enforce the $1,000-per-month support order, despite our reversal in *Rogers I*. A support order remains in force until the obligor files a proper motion seeking modification. *See Martin v.*

*Martin*, 79 Ark. App. 309, 87 S.W.3d 817 (2002); *see also* Ark. Code Ann. § 9-14-234 (Repl. 2002). We see nothing in the record indicating that, to this point, any such motion for modification has been filed (even though the trial court heard testimony regarding Edmundo's 2002 income). Thus, the original order remains in force. We therefore reverse the trial court's award of child support in the amount of $300 per month with directions to continue to enforce the $1,000-per-month award established in the original decree. Further upon our *de novo* review, we direct the trial court to recalculate the arrearage amount in light of our holding.

### Issue #4 — Alimony

We will not reverse a trial court's ruling with regard to a payor's alimony obligation unless the court's finding is clearly erroneous. *See Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003).

The trial court declined to award alimony because paragraph 7 of the premarital agreement provided that alimony would be forfeited except under conditions of adultery, mental or physical abuse, and/or abandonment. The court apparently concluded that, because the divorce was granted on grounds of general indignities, the above forfeit provision applied.

An alimony award is a continuing general decree against the obligor that endures until modified by a change in the condition of the parties. *See Office of Child Support Enforcement v. Ragland*, 330 Ark. 280, 954 S.W.2d 218 (1997). Modification of an award of alimony must be based on a change in the circumstances of the parties. *Hass v. Hass, supra.* Further, our courts have recognized a general rule that accrued alimony should not be retroactively modified. *See Kirkland v. Wright*, 247 Ark. 794, 448 S.W.2d 19 (1969).

The original alimony award in this case was $350 per month for twelve months plus a $5,000 lump sum. In *Rogers II*, we ruled that the original chancellor had the authority to enforce that alimony award. Thus, those sums accrued prior to the entry of the decree in the present case and were therefore not subject to modification. That being so, we conclude that the trial court should enforce the original alimony award.

In light of the foregoing, we reverse and remand on the bases stated herein.[5]

Reversed and remanded.

GLADWIN and GRIFFEN, JJ., agree.

---

[5] Edmundo asks this court to revisit his argument regarding the defense of condonation, which the trial court denied in this case. However, Edmundo has not prosecuted a cross-appeal, and we therefore decline to consider his request for affirmative relief. *See Independence Fed. Sav. & Loan Ass'n v. Davis,* 278 Ark. 387, 646 S.W.2d 336 (1983).