Frankie IRVIN *v.* STATE of Arkansas

CR 00-1086 49 S.W.3d 635

Supreme Court of Arkansas
Opinion delivered July 9, 2001

*J. Eric Hagler, P.A.,* by: *J. Eric Hagler,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Appellant Frankie Irvin appeals his conviction by a Desha County jury of aggravated robbery and theft of property for which he was sentenced to thirty years' and fifteen years' imprisonment respectively. On appeal, Irvin raises one issue, arguing that the trial court abused its discretion in failing to recuse. We affirm.

On April 3, 1996, Irvin was charged as an habitual offender with aggravated robbery, theft of property, and attempted capital murder, for his part in a November 13, 1995, robbery of a store operated by Bill Montgomery, who was a victim of the crime. Prior to trial, the prosecution dismissed the attempted-capital-murder charge but continued to pursue the remaining felony charges.

As early as March 6, 1997, Circuit Judge Sam Pope indicated in a letter to Irvin's first defense counsel, A. Wayne Davis, that he was under the impression that a motion for continuance may have been meant as a motion for recusal based on an attached affidavit from Irvin asking for the judge's recusal. In the judge's letter to counsel, the judge requested that if such were the case, then Irvin should file a formal motion for the judge's recusal.

On the night before trial in April 1997, Davis faxed a scathing motion to the circuit clerk's office requesting the judge's recusal. Irvin appeared the next day for trial, but Davis did not. Irvin requested a continuance until he could have an attorney present to represent him. After a hearing in chambers, the trial court ordered that Irvin proceed to trial without his attorney, and the court took evidence on the motion to recuse and denied the same. Apparently,

the trial court believed that Davis's failure to appear for trial was, in part, calculated by both Davis and Irvin as an attempt to get the case continued. Irvin, representing himself, was convicted on both charges and sentenced to 240 months in prison. Irvin appealed, and in a decision issued May 27, 1998, the Arkansas Court of Appeals reversed Irvin's conviction finding that the trial court violated Irvin's Sixth Amendment right to assistance of counsel at trial. *See Irvin v. State*, 62 Ark. App. 143, 972 S.W.2d 948 (1998). The court remanded the case for a new trial.

On remand, Irvin retained the services of attorney William McArthur. On November 2, 1998, the trial court held a routine pretrial hearing at which McArthur orally moved for the trial judge to recuse on the basis that the judge, while the elected prosecutor in that district, had previously prosecuted the defendant. The trial court denied the motion, finding that it had already ruled on that issue prior to the first trial and that because it had not been challenged on appeal by Irvin's appellate attorney, it could not be raised again.

Irvin was tried a second time in this matter on March 16, 1999. On the morning of trial before the jury was brought in, Irvin's counsel again requested that the trial judge recuse, based on the judge's prior prosecutions of Irvin. In addition, defense counsel questioned Irvin regarding this motion, and Irvin testified that he believed the judge should recuse because he had been involved in approximately six prior prosecutions of Irvin. The trial court denied the motion finding that Arkansas case law does not require a judge in such a situation to recuse. The trial ended in a hung jury on March 18, 1999.

At a pretrial hearing on June 21, 1999, neither Irvin nor his attorney appeared for the hearing. The trial judge issued a bench warrant for Irvin's arrest for his failure to appear. On August 30, 1999, another hearing was held at which the trial court indicated that McArthur, who was not present, had requested to be relieved of counsel due to Irvin's failure to cooperate with him in the case. Irvin, who was present, indicated that he had not received any notice of the pretrial hearing for June 21, 1999, but that he wanted McArthur to continue to represent him. During this hearing, Irvin indicated that he wanted to retain McArthur again, but that he did not have the money to do so. Irvin requested that his bond be reinstated, but the court denied this request in part because of Irvin's failure to appear on June 21, 1999. The court declined to relieve McArthur, in part because the trial court did not want Irvin

to be without counsel during a pending video deposition, and again denied Irvin's second request for bond until he had an attorney present. McArthur's motion to be relieved as counsel was denied in writing on September 3, 1999.

On October 4, 1999, at a pretrial hearing, Irvin made an oral motion to the trial court to set bond as it had done prior to the other trials. No notice was given to the State, and the State recommended that bond be set in the amount of $75,000. On that same day, the court granted McArthur's motion to be relieved as counsel, as Irvin had apparently hired Attorney Dale West to represent him. However, on October 6, 1999, the State filed a motion to reconsider the bond amount arguing that it had not been prepared for Irvin's oral motion on October 4, and only afterwards found out that Irvin had charges pending against him in Arkansas County, Arkansas, and New Hampton, Iowa, where Irvin apparently fled at some point in the prior proceedings. The State alleged in its motion that based on Irvin's prior conduct, he was a flight risk. The State asked that bond be increased to $400,000, that Irvin have no contact with the victims in the case, and that he not be allowed to visit his father whose property is adjacent to the victims's property.

A hearing was held on October 15, 1999, for the court to consider arguments on this motion. Irvin appeared without counsel because West apparently had decided not to represent him. As such, the trial court appointed public defender Gary Potts to represent Irvin. Potts, however, was not present at that hearing. Irvin told the court that he did not want Potts to represent him because Potts had refused in a prior case to file a motion for the judge's recusal. The trial judge denied Irvin's request, and Irvin then "fired" Potts. The trial court indicated that Irvin had the option to represent himself, but that even if he did that, Potts would remain to offer guidance in the case. Irvin then argued that Potts would have a conflict of interest representing him because his codefendant was represented by a public defender from the same office. Again, the court indicated that Potts would remain on the case unless Irvin hired a private attorney.

The State then presented its evidence on its motion to revoke or reset bond. This evidence indicated that Irvin had fled from police on two occasions, and that he was a flight risk. Irvin conducted his own cross-examinations of the witnesses. The trial court then ruled, over Irvin's numerous objections and under threat by the court that Irvin's mouth would be taped closed, that his bond would be set at $400,000. On October 21, 1999, the trial court

entered an order modifying Irvin's bail bond to $400,000. This order also indicated that the trial date was set for December 9 and 10, 1999. In addition, the trial court appointed public defender Gary Potts to represent Irvin at trial. Irvin did not file a writ of certiorari challenging this modification of bond.

On November 3, 1999, Potts moved to be released as counsel on the case, citing in his motion that Irvin failed to turn over any of his prior attorneys's previous records in the case because Irvin believed that Potts would not work in his best interest. Potts's motion also indicated that Irvin claimed to have hired a private attorney, but would not release the name to Potts. Furthermore, Potts's motion indicated that Irvin did not want Potts's representation because Potts had been a prosecutor in Monticello Municipal Court while the trial judge was the elected prosecuting attorney in that district.

Irvin, himself, filed a *pro se* motion for the trial judge's recusal on November 3, 1999. In his motion, Irvin alleged that the trial judge was biased, prejudiced, and "less than fair and impartial" based on the judge's prior ruling in the first trial requiring Irvin to represent himself. He also stated that the judge abused his discretion in denying Irvin a continuance to find new counsel on April 17, 1997, and that the judge attributed Attorney Davis's "dirty language" in the first motion to recuse to Irvin, and that this was unfair. Furthermore, Irvin's attached affidavit indicated that he believed the judge had been unfair by setting his bond at $400,000 on October 15, 1999. Five days later, Irvin's new attorney, Jack Bell, filed a supplemental motion for recusal on November 8, 1999. This motion adopted Irvin's *pro se* motion, and included as additional grounds that the trial judge, during his term as prosecuting attorney in the 10th Circuit, had prosecuted Irvin on more than one occasion for various matters. These motions were again denied by the trial court.

At a prehearing on January 31, 2000, Irvin's attorney again asked that the trial judge recuse. The trial court again denied the motion.

This case finally proceeded to trial, and Irvin was convicted and sentenced. He filed his notice of appeal on February 29, 1999.

In his only issue on appeal, Irvin argues that the trial court abused its discretion in failing to recuse. Irvin raises several points to attempt to show that the trial judge was biased and prejudiced

against him. He argues that the judge showed bias where the court required him to represent himself at the first trial, the judge had prosecuted Irvin several times as the elected prosecuting attorney in that district, the judge indicated that he did not believe that Irvin had not gotten notice of a prehearing on June 21, 1999, the judge increased the amount of bond from $75,000 to $400,000, the judge denied his right to an attorney at the bond hearing, and the judge dealt harshly with him at this hearing, at one point telling him to "shut up" and that he would tape Irvin's mouth closed if Irvin continued with his outbursts.

The State responds that only two issues were raised by Irvin below that are preserved for review here, those being the issues on the denial of Irvin's right to counsel at his first trial and the trial judge's prosecutions of Irvin when the judge was the prosecuting attorney in the district. The State notes, however, that none of the other alleged errors by the trial court were raised in the recusal motions below to preserve them for appeal. Regardless, on those issues, the State argues that the trial court did not abuse its discretion in failing to recuse because none of the judge's statements to Irvin over the course of the prosecution, including the threat of taping Irvin's mouth closed, occurred in front of the jury to prejudice Irvin in their eyes, nor did these statements indicate the trial judge's feelings, other than frustration, towards Irvin. Regarding the issue of the increase in the bond, the State argues that the proper vehicle to challenge a bond revocation is through a writ of certiorari, and that issue has been waived. Regardless, the State argues that the trial court was acutely aware of Irvin's right to counsel throughout the proceedings, and, in fact, continued the case at several points to allow Irvin to retain counsel. Overall, the State argues that Irvin cannot show any bias on the judge's part that prejudiced him in this case.

 The Arkansas Constitution, Article 7, § 20, as well as the Arkansas Code of Judicial Conduct, Canon 3(c), provide that judges must refrain from presiding over cases in which they might be interested and must avoid all appearances of bias. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998); *Matthews v. State*, 313 Ark. 327, 854 S.W.2d 339 (1993). However, a judge is not required to recuse because of his or her life experiences. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994). In addition, there exists a presumption of impartiality. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996). The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Ayers, supra; Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000); *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40

(1999). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court, and the burden is on the party seeking to disqualify. To decide whether there has been an abuse of discretion, we review the record to see if prejudice or bias was exhibited. *Black v. Van Steenwyk*, 333 Ark. 629, 970 S.W.2d 280 (1998); *Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997); *Reel, supra*.

■ A trial judge's development of opinions, biases, or prejudices during a trial do not make the trial judge so biased as to require that he or she recuse from further proceedings in the case. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996); *Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987). Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge which will cause us to reverse his or her refusal to recuse. *Noland, supra; Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). The mere fact of adverse rulings is not enough to demonstrate bias. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Matthews, supra; Walker v. State*, 241 Ark. 300, 408 S.W.2d 905 (1966); *Narisi v. Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge. *Id.*

■ Initially, we note that Irvin's allegations of bias are based on remarks made by the trial judge during various pretrial hearings. However, while the abstract contains those hearings, it does not contain any part of his trial. This, in and of itself, necessarily limits our review. When the judge's communications are the basis for an allegation of bias, it is necessary to view the communications that the judge makes to, or in front of, the jury. *Walker, supra*. Statements made before the jury is impaneled and in no way communicated to the jury cannot constitute bias or prejudice. *Id.* As such, because it is the appellant's duty to present a record on appeal demonstrating error, and the record is limited to that which is abstracted, *see Johnson v. State*, 342 Ark. 357, 28 S.W.3d 286 (2000), we can only review the statements made by and actions of the judge during the pretrial hearings, as that is all that is abstracted. In *Walker,* for example, the trial court made several strong remarks prior to empaneling the jury, but we held no showing of disqualifying prejudice had been shown, pointing out that the fact that a trial judge may have a personal opinion as to the merits of the case does not make the trial court so biased and prejudiced as to require his

disqualification, and commenting that the "mischief occurs when the trial court communicates to the jury by word or deed a personal bias, prejudice or animus toward the accused, causing the accused to be denied a fair and impartial trial." *Walker,* 241 Ark. at 309. Certainly, the jury could not have been swayed by any of the trial court's remarks because the jury was not present during any of those statements. Therefore, Irvin cannot show that the trial court's remarks prejudiced him in front of the jury.

As such, we must then consider whether any of the trial court's pretrial actions were prejudicial to Irvin. In reviewing Irvin's complaints of bias by the trial court, his claims have no merit. Regarding Irvin's representation of himself at the first trial, this court has been resolute in holding that reversal and remand due to error by the trial judge do not automatically require recusal of the trial judge who erred. *Walls v. State,* 341 Ark. 787, 20 S.W.3d 322 (2000); *Wilson v. Neal,* 341 Ark. 282, 16 S.W.3d 228 (2000). A judge has a duty to sit on a case unless there is a valid reason to disqualify. *Carton v. Missouri Pac. R.R.,* 315 Ark. 5, 865 S.W.2d 635 (1993). As such, just because the court of appeals reversed and remanded this case after Irvin's first trial and conviction does not point to bias or prejudice on the part of the trial judge after the case was remanded. In *Walls,* for example, this court dealt with a recusal motion based on statements made to the press by the trial judge. There, after the defendant had been convicted, the trial judge, prior to Walls's sentencing, made statements to the press regarding the defendant's case and the effects of the defendant's actions. On appeal, this court affirmed the convictions but remanded for resentencing. On remand, the same trial judge heard the action and modified the sentences. The defendant presented a motion for recusal, which was denied. On second appeal from resentencing, this court decided that the judge's decision not to recuse was not an abuse of discretion. This court stated:

> In the instant case, mere suspicion or conjecture that the judge's heart and mind were so tainted by events that occurred more than a year earlier that he could not view the matter afresh on remand is not enough. We take as a given that a judge is able to preside over a matter on remand with a clean slate, absent proof or some indication to the contrary. The record in this matter simply does not support Walls's contention that Judge Hanshaw was biased towards him at the resentencing. For all of these reasons, we hold that the trial judge did not abuse his discretion in declining to recuse in this matter.

*Walls*, 341 Ark. at 793.

Such is the case here where Irvin has wholly failed to show that any of the trial court's actions or statements indicate that he was biased or prejudiced towards Irvin based on the reversal and remand for the court's error in the first trial. To the contrary, the record indicates that the trial judge was particularly accommodating to Irvin over the course of the subsequent proceedings. The court was highly cognizant of the fact that Irvin needed an attorney during the pretrial proceedings, and delayed several hearings and reset several trial dates to allow Irvin to retain a private attorney. Furthermore, the court denied several attorneys's motions to be dismissed as counsel so that Irvin would have counsel at the proceedings. Irvin's conduct actually made this very difficult for the court in that Irvin appeared before the court without counsel because of Irvin's failure to hire counsel or accept a court-appointed attorney.

Unless there is an objective showing of bias, there must be a communication of bias in order to require the recusal for implied bias. *State v. Clemmons*, 334 Ark. 440, 976 S.W.2d 923 (1998). No such showing was made here. In *Clemmons*, for example, this court concluded that the fact that the defendant threatened the trial judge was not enough to raise questions of bias and prejudice. The court stated, "Such reasoning, if adopted, would mean a defendant, by misbehaving in court or confronting the judge, could force the judge's recusal. We have held that it is impermissible for a party or counsel to create an infirmity for purposes of requiring a judge's recusal. *See Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998)." As the record indicates in this case, Irvin retained several attorneys, and then either refused to cooperate with them or fired them, often just prior to trial. The trial court's requirement that Irvin proceed was merely the court's attempt at maintaining order and control of his own court despite the defendant's apparent attempts to delay prosecution of the case.

On the second issue, Irvin argues that the judge should have recused because the judge had formerly prosecuted Irvin while serving as the elected prosecuting attorney in the 10th Circuit. In *Beshears v. State*, 329 Ark. 469, 947 S.W.2d 789 (1997), the defendant argued that the trial judge should have recused from considering his posttrial petition because the trial judge, before he assumed the bench, prosecuted him on an unrelated matter ten years prior to the filing of the charges on which he was presently incarcerated. He also argued that the trial judge gained additional

knowledge about him when the trial judge represented him on a civil matter, and that the judge played a role in Beshears's return from the Act 309 program in Lawrence County. Beshears contended that these circumstances warranted the trial judge's recusal in order to avoid the appearance of impropriety. This court, however, disagreed, finding that despite these facts, the defendant could not point to any exhibition of bias or prejudice on the part of the trial court. This ruling indicates that it is not, in and of itself, error for a trial judge to preside over a case involving a defendant whom the judge previously prosecuted. *See also, Green v. State,* 21 Ark. App. 80, 729 S.W.2d 17 (1987) (citing *Jordon v. State,* 274 Ark. 572, 626 S.W.2d 947 (1982)). Here, Irvin offered no evidence that the trial judge was biased or prejudiced against him merely because he had acted as prosecutor in Irvin's prior prosecutions. This bare fact proves nothing and, absent any actual showing of bias or prejudice, cannot suffice to require the trial judge to recuse.

██ Even though the following additional matters were not raised below, because we review the record to see if prejudice or bias was exhibited, we will also consider Irvin's additional allegations of bias. *See Black, supra; Dolphin, supra; Reel, supra.* Regarding the trial court's disbelief of Irvin's assertion that he had not received notice of the June 21, 1999, prehearing, this does not itself show bias. It merely shows disbelief on the judge's part that Irvin, who had received prior notices at that address, had not received this notice although he was made aware at the mistrial that his case had been reset for trial in late June 1999. Whether the court believed Irvin is of no concern because Irvin cannot show that the trial court's disbelief of Irvin was ever communicated to the jury to prejudice him in any way.

██ Next, the trial court's resetting of bond from $75,000 to $400,000 was based on a legitimate concern that Irvin would flee. The State presented evidence that Irvin had fled law enforcement on two prior occasions, and that he had been arrested in Iowa during the time that he was supposed to be present in Arkansas awaiting this prosecution in Desha County and another in Arkansas County. The court determined that these facts were sufficient here to increase or deny bond. Furthermore, although Irvin argues that this increase in bond and the court's denial of his request to be released without bond indicates the trial judge's bias against him, Irvin's argument is not persuasive. As the State notes, this court treats an appeal from the denial of bail as a petition for a writ of certiorari. *Meeks v. State,* 341 Ark. 620, 19 S.W.3d 25 (2000); *Larimore v. State,* 339 Ark. 167, 3 S.W.3d 680 (1999); *Duncan v.*

*State*, 308 Ark. 205, 823 S.W.2d 886 (1992) (citing *Thomas v. State*, 260 Ark. 512, 542 S.W.2d 284 (1976)); *Perry v. State*, 275 Ark. 170, 628 S.W.2d 304 (1982). This court has stated that a writ of certiorari is the appropriate vehicle for relief in bail proceedings. *Larimore, supra.* Here, however, Irvin did not petition for a writ of certiorari from the setting of the bond at either the $75,000 level or the $400,000 level. Therefore, the proper vehicle for challenging this increase was abandoned. In addition, adverse rulings against a party are not enough to show bias or prejudice. *Gates, supra.*

■ Regarding the trial court's proceeding at the bond hearing where Irvin was not represented by counsel, Irvin cannot show that he was prejudiced by this because he has not shown that the amount was unfair or that this amounted to pretrial punishment. The trial court was faced with a dilemma: wait until Irvin retained counsel to consider resetting the bond or proceed with the bond reconsideration. Had the court waited, the proceedings would have been at Irvin's mercy until he eventually retained an attorney. This delay is evidenced by the fact that although Irvin advised the trial court on two occasions that he had spoken to attorneys and was waiting hear back from them, over six weeks had passed from those assurances until the bond reconsideration hearing during which time Irvin had not retained an attorney. In addition, the trial court attempted to appoint Potts to represent Irvin, but Irvin "fired" Potts immediately. As such, the trial court proceeded with the bond hearing instead of subjecting the system to Irvin's dilatory tactics. Again, however, Irvin cannot show that the amount of bond was unjustifiable based on the facts presented by the State at that hearing.

■ Finally, the trial court's statement to Irvin that he would tape closed Irvin's mouth if he did not stop talking at the hearing on the bond reconsideration does not warrant reversal. The State is correct that the comment demonstrated nothing more than the judge's frustration with Irvin and his interruptions and the judge's attempt to maintain the decorum and dignity of the court proceeding. This exchange was brief, and it was not done in the presence of a jury. Therefore, it cannot constitute bias or prejudice requiring disqualification. *Walker, supra.*

There is no evidence that the trial judge treated Irvin or his defense counsel improperly, that the trial court presided over Irvin's trial in an unfair or impartial manner, that the trial judge made any improper rulings as to Irvin during the trial, or that the trial judge

exhibited any bias or prejudice toward Irvin during the trial. Irvin did not include any part of the trial in the abstract.

Affirmed.