KENNETH S. HIXSON, Judge
Appellant Duan Harris was convicted in a jury trial of rape, aggravated assault, and interference with emergency communication. The victim was Mia Colley. For these offenses, Mr. Harris was sentenced to ten years in prison.
Mr. Harris now appeals, raising two arguments for reversal. First, he argues that the trial court erred in allowing Lakeisha Harris to testify about an alleged assault by him against her. Mr. Harris contends that this evidence should have been excluded pursuant to Arkansas Rules of Evidence 403 and 404(b). In addition, Mr. Harris challenges the sufficiency of the evidence to support his aggravated-assault conviction. We affirm.
Prior to trial, the State filed a motion for the admission of Lakeisha Harris's testimony. This testimony pertained to an assault committed by appellant against Ms. Harris about eleven months after he committed the charged offenses against the victim herein, Mia Colley. In its motion, the State asserted that the attacks against each victim were under similar circumstances and that Ms. Harris's testimony was admissible to show appellant's motive and intent with respect to his assault of Ms. Colley. A pretrial hearing was held on the State's motion, wherein Ms. Harris gave her proposed testimony. Appellant objected to the introduction of this testimony at trial, arguing that it was inadmissible under Arkansas Rules of Evidence 403 and 404(b). The trial court found that this testimony was relevant to show appellant's intent and that the probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court ruled that Ms. Harris's testimony would be admissible at trial.
At the jury trial, Mia Colley testified about the assault and rape committed by the appellant against her, which occurred on August 14, 2015. Ms. Colley testified that she knew Mr. Harris because they had gone to school together, and that he had recently been over to her apartment a couple of times to visit and eat pizza. On his third visit to her apartment, on August 14, 2015, they had planned to go to a *712 movie. According to Ms. Colley, while he was there she was sitting on her couch and received a text message from another man who asked her to go to a movie. While she was responding to the text, Mr. Harris hit her in the back of the head.
Ms. Colley testified that, after Mr. Harris struck her in the back of the head, she jumped up off the couch and he came around and hit her two or three more times. Mr. Harris grabbed her by the neck, and he choked and punched her until she was unconscious. Mr. Harris dragged her into her bedroom. When Ms. Colley regained consciousness, she was naked and Mr. Harris was having forcible intercourse with her. Ms. Colley testified that Mr. Harris penetrated her vaginally and anally and that he also forced her to give him oral sex. Mr. Harris had blocked the front door of the apartment with a couch to prevent Ms. Colley from leaving.
Ms. Colley stated that she was beaten badly, and that after Mr. Harris was finished raping her she asked him if he would take her to the hospital. Mr. Harris at first refused, but he finally agreed to take her to the hospital when Ms. Colley faked an asthma attack. Ms. Colley stated that Mr. Harris had taken her phone from her because he did not want her to call the police. On the way to the hospital, Mr. Harris told Ms. Colley to make up a story about being attacked and raped by a stranger.
When they arrived at the hospital, Ms. Colley told the nurse that Mr. Harris had beaten and raped her. Mr. Harris left the facility. The nurse observed hemorrhaging in Ms. Colley's eyes, and a rape kit was ordered. Vaginal and anal swabs tested positive for semen that matched Mr. Harris's DNA.
The police were put on notice to be on the lookout for Mr. Harris's car. Officer Anthony Petty observed Mr. Harris's car traveling at over eighty miles per hour in a nearby town. Officer Petty initiated his lights and sirens and gave chase. According to Officer Petty, Mr. Harris drove almost nine miles before he finally stopped and was taken into custody.
Two days after his arrest, Mr. Harris agreed to an interview with the police. During the interview, Mr. Harris acknowledged that, on the night of the alleged offenses, he got upset with Ms. Colley after she received a text from another man. Mr. Harris said that he cussed her out and grabbed her by the hair, but he denied striking or choking her. Mr. Harris stated that, after the argument ended, they had consensual sex.
The State called Lakeisha Harris to testify. Mr. Harris renewed his objection to her testimony on the grounds that it should be excluded pursuant to Arkansas Rules of Evidence 403 and 404(b). The trial court overruled appellant's objection.
Ms. Harris testified that appellant is her half sibling. Ms. Harris testified about an incident that occurred on July 4, 2016. On that night, they had been drinking wine and Mr. Harris came to her house. They were sitting on the couch and Mr. Harris was rubbing her arm, which made her feel uncomfortable. According to Ms. Harris, she handed Mr. Harris his car keys for him to leave when he jumped up and punched her in the back of the head. She tried to fight back, and Mr. Harris put her in a choke hold and said she had stolen his money. Mr. Harris choked her until she was unconscious. When she awoke, she was in her daughter's bedroom and was naked. Mr. Harris continued to punch her and pull her hair. Ms. Harris recalled that Mr. Harris told her she was going to "suck his penis," but she could not recall whether that occurred. Ms. Harris described it as an "out of body experience" and did not *713 remember being raped. Mr. Harris restrained Ms. Harris from leaving her home, but at some point she was able to call the police by hitting the panic button on her security system. The police arrived a few minutes later. Ms. Harris went to the hospital and had stitches put in her lip. However, Ms. Harris did not want to do a rape kit and none was performed.
Although it is listed as his second argument on appeal, Mr. Harris argues that there was insufficient evidence to support his conviction for aggravated assault. When an appellant challenges the sufficiency of the evidence, we review the sufficiency argument prior to a review of any alleged trial errors. Cogburn v. State , 2016 Ark. App. 543, 2016 WL 6609490. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Id. Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty without resort to conjecture. Breedlove v. State , 62 Ark. App. 219, 970 S.W.2d 313 (1998). We review the evidence in the light most favorable to the State, considering only the evidence that tends to support the verdict. Morton v. State , 2011 Ark. App. 432, 384 S.W.3d 585.
Mr. Harris argues that the State failed to prove each and every element of aggravated assault. Arkansas Code Annotated section 5-13-204 (Repl. 2013) provides, in relevant part:
(a) A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely:
(1) Engages in conduct that creates a substantial danger of death or serious physical injury to another person;
....; or
(3) Impedes or prevents the respiration of another person or the circulation of another person's blood by applying pressure on the throat or neck or by blocking the nose or mouth of the other person.
Mr. Harris contends that the State did not put forth any evidence for the elements of "under circumstances manifesting extreme indifference to human life" or "[e]ngag[ing] in conduct that creates a substantial danger of death or serious physical injury." Therefore, he asserts that his aggravated-assault conviction should be reversed.
The phrase "under circumstances manifesting extreme indifference to the value of human life" is found in numerous criminal offenses involving injury or death to persons. McCoy v. State , 347 Ark. 913, 69 S.W.3d 430 (2002). Regardless of the offense in which it appears, however, the supreme court has consistently viewed that phrase as part of the proof of the actor's mental state. Id. We hold that the State introduced sufficient proof that Mr. Harris acted under circumstances manifesting extreme indifference to the value of human life where he repeatedly delivered blows to the victim's face and choked her into unconsciousness. Photographs of the victim introduced at trial showed that, after the attack, Ms. Colley had numerous pronounced red marks about her neck area and burst blood vessels in both eyes. This was substantial evidence to support this element of the offense.
Mr. Harris also argues under this point that the State failed to prove that he engaged in conduct that created a substantial danger of death or serious physical injury. We disagree, but even were we to credit this argument, Mr. Harris did not argue either below or on appeal that the State failed to prove the other manner by which this offense could be established, i.e., that he impeded or prevented the respiration *714 of another person or circulation of another person's blood by applying pressure on the throat or neck or by blocking the nose or mouth of the other person. And even had this been properly preserved below and argued on appeal, there was substantial evidence to support this element given the victim's testimony that Mr. Harris choked her until she was unconscious. Therefore, there was substantial evidence to support appellant's aggravated-assault conviction.
Mr. Harris's remaining argument is that the trial court erred in allowing Lakeisha Harris to testify about an alleged attack by the appellant against her because this testimony should have been excluded pursuant to Arkansas Rules of Evidence 403 and 404(b). The supreme court has held that the admission or rejection of evidence under Rules 403 and 404(b) is committed to the sound discretion of the trial court, which will not be disturbed on appeal absent a showing of a manifest abuse of discretion. Eubanks v. State , 2009 Ark. 170, 303 S.W.3d 450.
Rule 404(b) provides:
Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Gaines v. State , 340 Ark. 99, 8 S.W.3d 547 (2000). Evidence is independently relevant if it proves a material point and is not introduced solely to prove that the defendant is a bad person. Haire v. State , 340 Ark. 11, 8 S.W.3d 468 (2000).
Mr. Harris asserts that he was primarily charged with rape. He points out that Ms. Harris's testimony pertained to events that allegedly occurred after the events for which he stood trial. Mr. Harris further posits that Ms. Harris did not allege in her testimony that she had been raped, and that she was unsure as to whether anything sexual happened during her altercation with appellant. Mr. Harris contends that the events involving Ms. Harris were totally unrelated to the current charges, and that her testimony should have been excluded under the protection provided by Rule 404(b).
Mr. Harris additionally argues that Ms. Harris's testimony should have been excluded under Rule 403, which provides in pertinent part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Mr. Harris contends that Ms. Harris's testimony was highly prejudicial, particularly because of the fact that Ms. Harris is his half sibling. In the State's closing argument, the State referred to Ms. Harris as appellant's sister and surmised that appellant may have stopped short of raping her because they were half siblings. Mr. Harris argues that the familial relationship he has with Ms. Harris was highly prejudicial and had little probative value.
To establish that there was abuse of discretion, an appellant must make a showing that the trial court acted improvidently, thoughtlessly, or without due consideration. Holland v. State , 2014 Ark. App. 644, 448 S.W.3d 220. We hold that Mr. Harris failed to make such a showing in this case.
*715 As an initial matter, Mr. Harris is incorrect in arguing that testimony about his other bad acts was inadmissible because the acts occurred after the acts giving rise to the current charges. This is because we have recognized that Rule 404(b) does not distinguish between prior and subsequent bad acts by a defendant. In Wells v. State , 2012 Ark. App. 596, 424 S.W.3d 378, we stated that Rule 404(b) also applies to subsequent bad acts of an appellant. Evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote. Nelson v. State , 365 Ark. 314, 229 S.W.3d 35 (2006). However, in this case, the assaults on the two victims occurred less than a year apart, which satisfied the temporal-proximity requirement of admissibility under Rule 404(b). See Nelson , supra (prior convictions of appellant were admissible to show his intent in committing the charged offenses even though the prior convictions occurred fourteen years earlier).
We now turn to Mr. Harris's argument that Ms. Harris's testimony was inadmissible because the alleged acts committed against her lacked similarity to the acts committed against Ms. Colley. Our supreme court has held that testimony about other offenses is independently relevant under Rule 404(b) to show a defendant's intent to commit the predicate offenses if there is sufficient similarity between the circumstances of the crimes. See Sasser v. State , 321 Ark. 438, 902 S.W.2d 773 (1995). The degree of similarity between the circumstances of the other crimes and the particular crime at hand required for the admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial court. Id.
In this case, we conclude that the appellant's acts committed against Ms. Harris were sufficiently similar to the acts committed against Ms. Colley to be admissible as probative of his intent under Rule 404(b). In both instances, Mr. Harris went to the victim's apartment and initiated the assault by punching the victim in the back of the head. Mr. Harris then choked each victim into unconsciousness and dragged her into a bedroom. When each victim regained consciousness, she discovered she had been disrobed and was naked. Mr. Harris continued to repeatedly punch each victim. Although Ms. Colley confirmed that she was raped and Ms. Harris did not remember being raped, Ms. Harris did recall that Mr. Harris had made sexual advances toward her, choked her unconscious, dragged her into the bedroom, disrobed her, and told her she was going to "suck his penis." During both episodes, Mr. Harris prevented the victim from leaving her home. Each victim later sought medical treatment for injuries inflicted by the appellant.
In this case, Mr. Harris told the police that his sexual acts with Ms. Colley were consensual. We hold that the testimony of his assault against Ms. Harris was independently relevant to show appellant's intent with respect to his acts committed against Ms. Colley and that those acts were forcible as opposed to consensual. Therefore, we hold that there was no abuse in admitting Ms. Harris's testimony under Rule 404(b).
Appellant's remaining argument is that the trial court erred in admitting Ms. Harris's testimony under Rule 403 because any probative value was substantially outweighed by the danger of unfair prejudice. Mr. Harris primarily takes issue with the testimony by Ms. Harris that they are half siblings and the alleged prejudice resulting from this connotation. However, in Ms. Harris's testimony she stated that, after the attack, "he told me he found out *716 that our dad was not really his dad, I guess that made it o.k. to have sex with me." Thus, it is unclear whether not the jury believed appellant and Ms. Harris to be half siblings. At any rate, in view of the similarities of the attacks on the two victims as discussed above, Ms. Harris's testimony was highly probative on the issues of intent and lack of consent. On this record, we cannot say the trial court abused its discretion in balancing the evidence under Rule 403 and finding that its probative value outweighed the danger of unfair prejudice.
Affirmed.
Klappenbach and Glover, JJ., agree.