Cite as 2021 Ark. App. 160

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-20-405

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 14, 2021 |
| KERRY KELLY | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-19-115] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TROY B. BRASWELL, JR., JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

The Faulkner County Circuit Court convicted appellant Kerry Kelly of one count of aggravated assault stemming from a road-rage incident. He was sentenced to three years' imprisonment followed by a three-year suspended sentence. Kelly argues on appeal that the trial court erred in denying his motion to dismiss because there was insufficient evidence to support his conviction. He also argues that the trial judge erred in denying his motion for a new trial and failing to recuse himself due to, at minimum, the appearance of bias that became apparent during the sentencing phase of his bench trial. We affirm.

I. *Background*

Allie David Harrison testified that on January 26, 2019, he and his stepdaughter, Lily Ott, were leaving the Faulkner County landfill off Old Morrilton Highway when they encountered Kelly. Harrison, who was driving, started to turn left onto the highway when

he saw a red truck coming from around a corner to his left at such a high rate of speed that Harrison did not have time to reverse.[1] Harrison conceded that his vehicle was blocking one-quarter to one-half of the truck's lane. Kelly's truck swerved into the other lane to avoid hitting Harrison. Harrison stated that, when he saw that Kelly had regained control of his truck, he continued with his left turn.

According to Harrison, Kelly's truck suddenly appeared in his rearview mirror. Kelly had made a U-turn. Harrison said that Kelly was "tailgating very, very closely." When Harrison turned onto Hogan Lane, Kelly followed him, passed him in a no-passing zone, and then slammed on his brakes. Harrison was forced to slam on his brakes to avoid hitting Kelly's truck. Harrison turned into an apartment complex in an attempt to "defuse the situation," but Kelly turned into the next entrance to the complex. Harrison, who had by that time called 911, got back onto Hogan Lane, as instructed by the 911 operator. Kelly continued to follow Harrison, pulled alongside Harrison in a no-passing zone, and swerved toward his vehicle. Harrison swerved to the side to avoid being hit. Kelly then cut in front of Harrison's vehicle—within three to five feet—and again slammed on his brakes. In a two-lane roundabout, Kelly swerved toward Harrison, who was in the inner lane, trying to force him into the middle of the roundabout. Once out of the roundabout, Kelly sped up, got beside Harrison, and threw an object at Harrison's vehicle. The encounter concluded soon afterward. Harrison testified that, if he had not made evasive moves, Kelly "would have absolutely hit [his] vehicle."

---

[1]The record indicates that Kelly was driving a 2014 GMC Sierra.

Officer Peter Beck with the Conway Police Department responded to the road-rage incident. He testified that, when he initially confronted Kelly about the incident, Kelly claimed to have been at home all day.

The State also presented testimony pursuant to Ark. R. Evid. 404(b) to show Kelly's state of mind and *modus operandi*. Megan Hurtt testified that she was involved in a road-rage incident with Kelly in August 2018. Hurtt said that she had turned left from a fruit stand and that, because Kelly had to slow down, Kelly "decided to lay on his horn" and "flip [her] off." In addition, he threw a banana peel at her car. Hurtt testified that Kelly followed her in his red truck, that he was "on [her] tail the whole time," that he passed her in a no-passing zone, and that he "took out the front of [her] car and continued to drive off." The record indicates that Kelly was charged with several misdemeanors in connection with the hit-and-run incident involving Hurtt.

Defense counsel moved for "a directed verdict" as to two counts of aggravated assault, one pertaining to each victim—Harrison and Ott.[2] The trial court denied the motion. Kelly testified in his own defense, essentially denying that he had tried to run Harrison off the road. Counsel renewed the motion, which was again denied. Ultimately, the trial court found Kelly guilty of aggravated assault as to Harrison but not guilty as to Ott.

At the sentencing hearing held March 2, 2020, the State presented testimony from several witnesses in the community who had had negative experiences with Kelly, including

---

[2]Because this was a bench trial, counsel's directed-verdict motion was a motion to dismiss. Ark. R. Crim. P. 33.1(b).

Kelly's neighbor who felt compelled to move because of Kelly's dangerous driving through the neighborhood where her children played, several police officers who had felt disrespected by Kelly, and another citizen who was involved in a road-rage incident with Kelly in October 2019. One of the police officers testified with respect to a dash-camera video showing Kelly in a traffic stop for expired tags that escalated when Kelly called his mother to the traffic stop. The defense presented witnesses as well, including Kelly's employer, his uncle, and a coworker. Also, Kelly testified that he had completed an anger-management class and a driver's course.

In its ruling, the trial court made the following relevant comments:

It doesn't take a cliff to kill somebody in a car. It takes a swerve, one movement, that causes the car to lose control and kill someone.

And I know that because I've seen it time and time again in this community. I've seen kids die in car crashes because people that cannot control their anger are behind the wheel and they swerve at other people. I've seen it happen.

After his sentencing hearing, Kelly filed a motion for a new trial citing Ark. Code Ann. § 16-89-130(c)(7) (Repl. 2015) and alleging that his substantial rights had been affected because he did not receive a fair and impartial trial. Kelly cited the comments above and claimed that the trial court had showed actual bias, or the appearance of bias, due to the judge's personal experience with road-rage incidents and seeing children in the community die as a result of vehicle collisions caused by road rage. The trial court did not rule on Kelly's motion, and it was deemed denied.

II. *Discussion*

A. Sufficiency of the Evidence

Kelly argues that there was insufficient evidence to convict him of aggravated assault. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Harris v. State*, 2018 Ark. App. 219, 547 S.W.3d 709. Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty without resort to conjecture. *Id*. We review the evidence in the light most favorable to the State considering only the evidence that tends to support the finding of guilt. *Id*. We do not weigh the evidence presented at trial, as that is a matter for the fact-finder, nor do we assess the credibility of the witnesses. *Williams v. State*, 2019 Ark. App. 518, 588 S.W.3d 833.

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(1) (Supp. 2019). Aggravated assault is a Class D felony, Ark. Code Ann. § 5-13-204(b), which is punishable by a sentence not to exceed six years. Ark. Code Ann. § 5-4-401(a)(5) (Repl. 2013).

Kelly asserts that the evidence was insufficient to support his conviction for aggravated assault because his truck did not hit Harrison's vehicle, Harrison never claimed to be scared for his life, and he did not actually run Harrison off the road. Kelly further maintains that his testimony established that his purpose in following Harrison was to wave him down to speak with him about his driving.

5

A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). In *Neely v. State*, 18 Ark. App. 122, 711 S.W.2d 482 (1986), we held that it is the defendant's *conduct* that must be undertaken purposely, not the intended result, and that so long as the defendant purposely engaged in the required conduct, his intent in doing so is irrelevant. The aggravated-assault statute does not require physical contact. Ark. Code Ann. § 5-13-204(a)(1). Nor does the statute require that the victim actually fear for his or her safety. *Stuart v. State*, 2020 Ark. App. 131, 596 S.W.3d 552. Further, our law is clear that a vehicle may be used as a deadly weapon. *Harmon v. State*, 260 Ark. 665, 543 S.W.2d 43 (1976). The prevailing question is whether there was evidence to support the finding that the vehicle was used in a manner that caused a substantial danger. *Williams v. State*, 96 Ark. App. 277, 241 S.W.3d 290 (2006).

We hold that the evidence supports the trial court's conclusion that Kelly purposely swerved toward Harrison's vehicle, forced Harrison out of his proper lane, followed too closely, passed in a no-passing zone, slammed on his brakes as soon as he had pulled in front of Harrison, and threw an object at Harrison's vehicle. Further, we have no hesitation saying that this proof was sufficient for the trial court to find that Kelly's actions created a substantial danger of death or serious physical injury to Harrison. The trial court was not required to believe Kelly's self-serving testimony that he sought only to wave Harrison down in order to speak with him. *Williams, supra.* We hold that substantial evidence supports Kelly's conviction for aggravated assault.

Kelly further argues that the evidence was insufficient to convict him of aggravated assault involving Harrison given the trial court's statement that it had found the very same evidence was insufficient with regard to the aggravated–assault charge involving Ott. To the extent that this argument pertains to the sufficiency of the evidence, we note that Kelly did not object following the trial court's oral ruling at the guilt phase; he did not move to set aside the conviction immediately after the guilt phase or at the sentencing phase; and he did not mention the purported inconsistent decision in his motion for a new trial. When there are seemingly inconsistent verdicts in a jury trial, we have held that we do not consider that argument when it is raised for the first time on appeal. *Williams v. State*, 303 Ark. 193, 794 S.W.2d 618 (1990); *Cole v. State*, 33 Ark. App. 98, 802 S.W.2d 472 (1991). Similarly, we hold that Kelly's argument concerning an alleged inconsistent decision at his bench trial is not preserved where he raised no objection below. Without an objection, which would have given the trial court an opportunity to rule on the matter, there is simply no decision for this court to review. *Pitts v. State*, 2011 Ark. 322.

B. Recusal and Motion for New Trial

Kelly argues that the trial judge erred in failing to recuse himself from his case and in denying his motion for a new trial given the bias, or appearance of bias, that the judge showed by his remarks, set forth above, at the sentencing phase of the trial.[3] The decision

---

[3]Kelly argues that an additional phrase uttered by the judge during the sentencing phase reflected the judge's bias. The manner in which Kelly raises this argument is both disingenuous and misleading because no context is provided. The record shows that the judge repeated a crude and vulgar phrase used by Kelly toward a police officer during a traffic stop. Even a cursory reading of the record makes it clear that the judge was not, as asserted by Kelly on appeal, directing a question at Kelly.

whether to grant a new trial is left to the sound discretion of the trial court, and it is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Farmer v. State*, 2019 Ark. App. 148, 571 S.W.3d 78. Rule 2.11 of the Arkansas Code of Judicial Conduct provides that a judge must disqualify himself in any proceeding in which the judge's impartiality might be reasonably questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer. *Pedraza v. State*, 2015 Ark. App. 205, 465 S.W.3d 426. A circuit judge is presumed to be impartial, and a party seeking disqualification bears a substantial burden to prove otherwise. *Id.* A trial court's decision to recuse is within its discretion, and we will not reverse absent a showing of an abuse of discretion. *Id.*

According to Kelly, the judge should have recused himself because he had personal knowledge of, and experience with, people dying as a result of road rage and because the judge engaged in an unprovoked and inappropriate exchange with him that created real doubt in his mind that he had received a fair trial. The State asserts that Kelly's argument on recusal is not preserved in the absence of an objection or a request to recuse. Kelly insists that, because the judge's bias was not apparent until the sentencing phase, his only remedy was to file a motion for a new trial.

Kelly did not move for recusal of the judge when he had an opportunity, either with an objection at the sentencing phase when the remarks were made or in his subsequent motion for new trial. Kelly's motion for a new trial suggests that he, at most, wanted a jury trial, not recusal of the judge. To the extent Kelly argues that the trial court erred in denying *a request* to recuse—as opposed to sua sponte disqualification—Kelly is barred from raising

8

that argument for the first time on appeal. *See Graham v. State*, 2019 Ark. App. 88, 572 S.W.3d 29. This particular form of relief was not sought below.

We address only the denial of Kelly's motion for a new trial based on his assertion of bias or the appearance thereof. Bias is a subjective matter peculiarly within the knowledge of the trial judge, and whether the judge has become biased to the point that he should disqualify himself is a matter to be confined to the judge's conscience. *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). A trial judge is not required to recuse himself because of his life experiences. *Irvin, supra*. To decide whether there has been an abuse of discretion, the appellate court reviews the record to see if the trial court exhibited prejudice or bias. *Irvin, supra*.

We have examined the judge's ruling in its entirety and conclude that Kelly has not overcome the presumption that the trial judge was impartial. We cannot say that the trial judge's overall handling of Kelly's case demonstrated a lack of fairness. *See, e.g., Campbell v. State*, 288 Ark. 213, 703 S.W.2d 855 (1986) (affirming denial of postconviction relief and recognizing that judge's overall handling of case was not lacking in fairness despite the judge's remark during sentencing phase following conviction for rape of four-year-old stepdaughter, "If Mr. Campbell had done this to my child, I don't know that we would be having a hearing here today."). We also note that, while Kelly faced a total of twelve years' imprisonment on the two aggravated-assault charges, the trial court, for whatever reason, found him guilty of only one felony and imposed a prison term of three years followed by a three-year suspended sentence. Despite the trial judge's remarks, it is clear that he had not lost objectivity. We hold that there was no abuse of discretion.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Alexander Law Firm*, by: *Hubert Alexander*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.