Cite as 2022 Ark. App. 303

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-21-471

| | | |
|---|---|---|
| SAMUEL T. MCKAIG | APPELLANT | Opinion Delivered August 31, 2022 |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-17-422] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| | | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**STEPHANIE POTTER BARRETT, Judge**

Samuel McKaig was convicted by the Garland County Circuit Court of battery in the first degree and Class C felony failure to appear. He was sentenced to twenty years' imprisonment on the battery conviction and ten years' imprisonment on the failure-to-appear conviction, with the sentences to be served concurrently. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(k) of the Rules of the Arkansas Supreme Court and Court of Appeals, McKaig's counsel has filed a no-merit brief and a motion to withdraw, asserting that there is no issue of arguable merit to raise on appeal. The clerk of this court provided McKaig with a copy of his counsel's brief and notified him of his right to file a pro se statement of points for reversal, which he has done. We affirm McKaig's convictions and grant counsel's motion to withdraw.

The first-degree-battery charge resulted from an altercation between McKaig and Chris Bond on May 7, 2017.[1] Bond and his wife, Debra, were walking on a neighborhood street in Hot Springs Village when McKaig's vehicle rounded the corner and drove into the lane where the Bonds were walking, causing them to have to jump out of the way of the vehicle. Bond yelled at the driver of the vehicle to stay in his lane; McKaig backed up to where the couple was standing, got out of his vehicle, and according to Bond, began to savagely beat him with a rock and his hands. McKaig bit the sixty-nine-year-old Bond several times, and he "chewed" on Bond's thumb to the point it was partially amputated and had to be reattached. All the bones in Bond's face were either broken or fractured, and he required over one hundred stitches as well as twenty-seven staples to close his wounds. Bond was in the hospital for nine days, and while his thumb was successfully reattached, he testified that he lost one-third of his thumb in the attack. The doctor who reattached Bond's thumb testified that Bond had permanently lost some of the use in his thumb due to the injury. Bond explained that he had a concealed-carry license and was carrying a loaded revolver on his walk; he said that when McKaig attacked him, he unloaded his weapon into the ground because he was afraid McKaig might overtake him and use the firearm on him.

McKaig told a very different version of events, claiming Bond attacked him when he got out of his vehicle and then shot at him. He claimed he was only acting in self-defense when he hit Bond. McKaig was not shot or seriously injured; he declined medical care at the scene.

---

[1] The failure-to-appear charge stemmed from McKaig's failure to appear on September 11, 2018, for an omnibus hearing in the first-degree-battery case.

McKaig moved for a "directed verdict" at the close of the State's case with respect to the first-degree-battery charge,[2] arguing that first-degree battery required a loss of bodily function, and while there was damage to Bond's thumb, he was still able to use it as a thumb. This motion was denied. McKaig testified in his own defense; after his testimony, he rested his case, and the circuit court found him guilty of both charges.

A motion to dismiss at a bench trial is identical to a motion for directed verdict at a jury trial in that it is a challenge to the sufficiency of the evidence. *Colen v. State*, 2022 Ark. App. 148, 643 S.W.3d 274. In a nonjury trial, a motion to dismiss must be made at the close of all the evidence and must state the specific grounds relied on for dismissal; if the defendant moves for dismissal at the close of the prosecution's case, the motion must be renewed at the close of all the evidence. Ark. R. Crim. P. 33.1(b) (2021). Failure to challenge the sufficiency of the evidence at the times and in the manner required constitutes a waiver of any argument pertaining to the sufficiency of the evidence to support the judgment. Ark. R. Crim. P. 33.1(c).

Although McKaig challenged the evidence to support the first-degree-battery charge at the close of the State's evidence, he failed to renew this motion after he testified in his own defense, and he never moved to dismiss regarding the failure-to-appear charge. Therefore, any argument regarding the sufficiency of the evidence for either conviction is not preserved for appeal.

The circuit court made an upward departure from the presumptive sentence for the first-degree-battery conviction due to two aggravating factors—McKaig's conduct during the

---

[2]McKaig did not challenge his failure-to-appear conviction below nor does he challenge it on appeal.

commission of the offense "manifested deliberate cruelty to the victim exhibited by degrading, gratuitous, vicious, torturous, and demeaning physical or verbal abuse, unusual pain, or violence in excess of that necessary to accomplish the criminal purpose," Ark. Code Ann. § 16-90-804(d)(1) (Supp. 2021), and McKaig "knew or should have known that the victim was particularly vulnerable or incapable of resistance due to . . . advanced age, disability, or ill health." Ark. Code Ann. § 16-90-804(d)(2). These factors were discussed extensively on the record and reflected on the sentencing order as required by section 16-90-804(a)(1) and (2). The facts of this case support this discretionary upward departure, and there is no issue of arguable merit to be made on appeal that the circuit court erred in making this sentencing departure.

McKaig was removed from the courtroom during the formal sentencing hearing. When the circuit court began reciting the findings relative to sentencing, McKaig continuously interrupted the court, objected, interjected his version of the events, and yelled that he had proof that Bond had attempted to murder him. After several disruptions, the circuit court informed McKaig that if he could not let the court finish, it would "have to gag [him] or else you'll have to be--" to which McKaig responded, "You might as well." McKaig was then removed from the courtroom.

A defendant may lose his right to be present at trial if, after being warned he will be removed from the courtroom due to disruptive and disorderly behavior, he nevertheless conducts himself in such a manner that the trial cannot proceed. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). The right to be present may be reclaimed when the defendant agrees "to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.* Circuit courts must be given sufficient discretion when confronted with

4

disruptive, defiant defendants. *Id.* Here, McKaig demonstrated that he was going to continue to be disruptive, and he never requested to be readmitted to the courtroom after he was removed. Furthermore, there was no violation of McKaig's right to confront witnesses since this occurred at the sentencing hearing, and there were no witnesses. The circuit court did not abuse its discretion in having McKaig removed.

The last adverse ruling addressed by counsel is on the sentencing order for McKaig's failure-to-appear conviction. The sentencing order states that the sentence was a dispositional departure based on aggravating factor number seventeen, which is new criminal activity while on pretrial release. The failure-to-appear offense was the new criminal activity during McKaig's pretrial release. This is a dispositional departure because the presumptive sentence guidelines do not recommend an ADC disposition for a seriousness level 5 (failure to appear) with a criminal history score of 0. The failure-to-appear charge is a Class C felony. For a Class C felony, the sentence shall be not less than three years nor more than ten years. Ark. Code Ann. § 5-4-401(a)(4) (Repl. 2013). McKaig was sentenced to the maximum for a Class C felony, ten years. The dispositional departure is not erroneous under the circumstances, especially considering that the failure-to-appear sentence ran concurrently with the battery sentence.

McKaig filed pro se points. His points can be grouped into three categories: (1) sufficiency of the evidence to support his first-degree-battery conviction; (2) partiality of the circuit court; and (3) ineffectiveness of trial counsel. None of these arguments is preserved for appeal.

As discussed above, the failure to renew his motion to dismiss at the close of all the evidence waived any sufficiency argument on appeal. Furthermore, none of the sufficiency

5

arguments made by McKaig were raised to the circuit court. Arguments not raised at trial will not be addressed for the first time on appeal. *Still v. State*, 2022 Ark. App. 156, 643 S.W.3d 830.

McKaig next argues that the circuit court was not impartial. A circuit judge is presumed to be impartial. *Kelly v. State*, 2021 Ark. App. 160. The mere fact of adverse rulings is not enough to demonstrate bias. *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). McKaig made no request below regarding his belief the circuit judge was not impartial; therefore, he is barred from making any argument to that effect for the first time on appeal. *Kelly*, *supra*.

Finally, McKaig seems to argue that trial counsel was ineffective because evidence was being hidden, and some of the statements given regarding the incident were "blatant lies." McKaig stated that he would not want legal counsel if his appeal was "granted," as he had "already witnessed how little some of these attorneys really care about the truth." McKaig never raised an ineffective-assistance-of-counsel argument to the circuit court, and such an argument will not be considered on direct appeal unless the circuit court considered the issue. *Gordon v. State*, 2015 Ark. 344, 470 S.W.3d 673.

Affirmed; motion to withdraw granted.

GLADWIN and MURPHY, JJ., agree.

*Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.