Cite as 2025 Ark. App. 427

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-24-456

| | |
|---|---|
| SARAH-ELISE MITCHELL DUNKLIN<br>APPELLANT | Opinion Delivered September 17, 2025 |
| | APPEAL FROM THE DESHA<br>COUNTY CIRCUIT COURT |
| V. | [NO. 21ADR-20-45] |
| ROBERT GLENN CHATHAM<br>APPELLEE | HONORABLE ROBERT B. GIBSON III,<br>JUDGE |
| | AFFIRMED; MOTION TO DISMISS<br>DENIED |

**ROBERT J. GLADWIN, Judge**

This appeal arises from the Desha County Circuit Court's denial of appellant Sarah Elise Dunklin's motion for reunification counseling and request for the circuit court's recusal. Dunklin appealed an order entered on April 23, 2024, wherein the court granted Dunklin's motion to dismiss all pending motions before the court. On appeal, Dunklin argues that the circuit court erred when it denied her request for reunification counseling with her minor child and abused its discretion when it failed to grant the motion for recusal. Pending before this court is a motion to dismiss filed by the appellee, Robert Glenn Chatham, wherein he argues that Dunklin's appeal should be dismissed for lack of jurisdiction because she appealed a nonappealable order. We affirm; Chatham's motion to dismiss is denied.

I. *Background Facts*

Dunklin and Chatham were divorced by settlement agreement entered June 26, 2016, in Arkansas County.  There was one minor child ("MC") born of the marriage. Dunklin and Chatham shared legal custody of MC; however, MC lived with Dunklin the majority of the time.  In February 2020, a dispute regarding MC's custodial arrangements began. Chatham filed an emergency petition for relief on February 10, 2020, due to Dunklin's behavior and association with extreme conspiracy theories. Specifically, Chatham referenced Dunklin's delusional behavior and involvement with a group called The Children's Crusade.  In March 2020, Chatham filed a second petition for emergency relief, and the case was transferred to Desha County. In an order, the circuit court noted that the most concerning allegations involved Dunklin's alleged involvement with The Children's Crusade and Cynthia Acbug, a Colorado fugitive, who attempted to kidnap her own minor child during a custody dispute. Dunklin allowed Acbug to stay in her home in Desha County while she was a fugitive.

Dunklin underwent a psychological evaluation in August 2020, and the circuit court noted that "the results of the evaluation were alarming and essentially confirmed [Chatham's] allegations."  The court held a hearing on November 18, 2020, and modified custody of MC with Chatham having full custody and Dunklin receiving supervised visitation for six hours every other Saturday.  Dunklin's father was to supervise the visitation, and the court also ordered Dunklin to receive a second psychological evaluation and to follow all treatment recommendations.  The court noted that Dunklin could request that the court revisit MC's visitation arrangements in August 2021.

In spring 2021, however, Dunklin allegedly attempted to force MC to breastfeed during one of her supervised visits. During subsequent hearings, it was established that Dunklin's father—who was ordered to supervise the visitation—allowed Dunklin to be alone with MC. Accordingly, visitation was suspended with the exception of allowing some family visitation during the Easter holiday while the criminal investigation regarding the alleged breastfeeding incident was pending. Ultimately, the Arkansas State Police Crimes Against Children Division determined that the charges were "unsubstantiated."

In July 2022, Dunklin moved to reinstate in-person visitation. On November 10, the circuit court denied the motion and specifically referenced Dunklin's psychological evaluation wherein the examiner "expressed significant concerns about [Dunklin's] psychological function as it related to her parental fitness" as well as Dunklin's false allegations of sexual abuse against Chatham, harboring a fugitive in her home, making false statements to MC regarding the identity of her biological father, the breastfeeding allegations, and repeating extreme conspiracy theories in front of MC. Furthermore, the court cited Dunklin's complete lack of transparency throughout her psychological evaluation and MC's fear of being kidnapped as a result of Dunklin's involvement with The Children's Crusade. In evaluating MC's best interest, the circuit court also held that it could not ignore MC's desire for no contact with Dunklin, and Dunklin's admission that she attempted to breastfeed MC when she was six years old. Accordingly, the court refused to reinstate Dunklin's visitation; however, it ordered visitation with the Dunklin family over the Thanksgiving and Christmas holidays.

On December 16, 2022, Dunklin filed her motion for family-reunification counseling and maintained that it was necessary due to Chatham's pattern of parental alienation and MC's volatile reaction to being in Dunklin's presence during the Thanksgiving visitation. Dunklin alleged that MC's extreme animosity toward her was attributed to Chatham's parental alienation and that reunification counseling was "essential to a healthy upbringing." The circuit court conducted a hearing on the motion, and at the onset, Dunklin requested the appointment of licensed reunification counselor Dr. Kenneth Joe Heard to conduct the counseling at her expense. Dr. Heard testified that MC should continue to see her current counselor and stated his willingness to "collaborate" with that counselor. He characterized his objective as restoring a normal co-parenting relationship in which both parents "communicate and make decisions together for the best interest of the child." Furthermore, Dr. Heard testified that he developed a proposal whereby he would have extensive authority over all aspects of visitation, including the degree of supervision, if any.

Dunklin also testified at the hearing. She maintained that she had distanced herself from her previous dealings with Acbug, The Children's Crusade, and QAnon. However, Dunklin interjected on two occasions during her direct examination, stating that the court had a lot of "misinformation" about her past associations. Regarding Dunklin's testimony the court found as follows:

> Unfortunately, her testimony did not give the court any comfort that reunification counseling was in the best interest of [MC]. Dunklin's interjections are extremely troubling to the Court. They are troubling to the Court because Ms. Dunklin's history and prior conduct is almost entirely undisputed. There is no real misinformation . . . . She was questioned by Chatham's attorney about being online

4

and encouraging to mothers to effectively kidnap their own children. Dunklin claimed she couldn't remember what she said in online videos in 2020. The Court finds this comment to be disingenuous. Those are not the type of comments that someone makes offhand. Those are not the type of comments someone forgets. . . . The interjections and comments gave the Court an unsettled feeling on the day of the hearing. The Court has listened to the audio of the testimony several times since the hearing and each time the Court has the same uncomfortable feeling.

Dr. Benjamin Silber's second psychological evaluation of Dunklin was admitted as an exhibit. In his most recent evaluation, Dr. Silber opined that Dunklin did not meet the criteria for diagnosis of a psychological disorder. He further opined that "no new concerns related to her psychological functioning were identified. . . . I am unaware of any new instances of poor judgment, and Ms. Dunklin has demonstrated good judgment in many other areas of her life." Furthermore, the examiner concluded, "I cannot find current or recent psychological evidence that would suggest Ms. Dunklin would engage in behavior harmful to [MC]."

On the issue of reunification, the circuit court determined that it could not give Dr. Silber's opinion much weight, "primarily because it is based on the absence of new offenses by [Dunklin]." The court noted that there were no new offenses because Dunklin had been separated from MC and that the examiner's opinion "just doesn't hold water" because he admittedly disregarded Dunklin's previous admissions that she believed President Trump sent a spaceship to watch over Dunklin and MC, that the meat of children is in ice cream and McDonald's chicken nuggets, that she supported QAnon movements, and that she believed that there was a global conspiracy by elites "to traffic, rape, and potentially eat children." The circuit court concluded by stating, "[O]rdering reunification counseling

5

would definitely subject this child [to] additional psychological distress and could disrupt what is otherwise a stable, healthy situation." Accordingly, the circuit court denied Dunklin's motion for reunification counseling on March 8, 2024.

On March 7, Dunklin filed a motion to recuse wherein she argued that the circuit court's unwillingness to rule on the reunification motion after multiple requests—when coupled with the favorable recommendations yielded by her most recent psychological evaluation and the testimony of the reunification counselor—formed a basis for Dunklin to reasonably question the court's impartiality. Thus, Dunklin maintained that the circuit court was required to disqualify itself and transfer the case. Subsequently, the circuit court held a hearing on the recusal motion and entered its order denying Dunklin's motion to recuse on April 11.

Finally, on April 23, Dunklin moved to dismiss, requesting that the circuit court dismiss all pending motions with prejudice. Specifically, Dunklin explained that she was seeking an order of dismissal "that [would] enable her to appeal the court's order regarding reunification counseling and the order denying the motion to recuse." The court granted Dunklin's motion and dismissed with prejudice "all pled for or sought after relief not granted or denied." Dunklin filed a notice of appeal from the April 23 order and "all interlocutory orders entered prior to the final order." This appeal followed.

II. *Standard of Review*

Our standard of review in domestic-relations cases is well settled. We review domestic-relations cases de novo but will not reverse the circuit court's findings unless they are clearly

6

erroneous. *Doss v. Doss*, 2018 Ark. App. 487, 561 S.W.3d 348. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Due deference is given to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.* As to issues of law, however, this court gives no deference to the circuit court; rather, this court reviews issues of law de novo. *Hargrove v. Hargrove*, 2015 Ark. App. 45, 453 S.W.3d 683.

Additionally, we review a circuit court's denial of a motion to recuse under an abuse-of-discretion standard. *Ferguson v. State*, 2016 Ark. 319, 498 S.W.3d 733. A clearly erroneous interpretation or application of a law or rule will constitute a manifest abuse of discretion. *Id.* To decide whether there has been an abuse of discretion, our appellate courts review the record to determine if prejudice or bias was exhibited. *Id.*

### III. *Points on Appeal*

Dunklin argues (1) that the circuit court clearly erred when it denied her motion for reunification counseling because (a) the court did not make a finding that Dunklin was unfit; (b) the court applied the wrong standard to determine the motion; and (c) the circuit court misapplied the law and its role in domestic-relations cases and (2) that the circuit court abused its discretion when it denied her recusal motion, and reversal is required because of the court's statements about Dunklin, its treatment of her during the case, and the court's failure to timely issue an order.

7

IV. *Discussion*

A. Jurisdiction

As a preliminary issue, we must first address Chatham's motion to dismiss this appeal for lack of jurisdiction. Chatham filed the motion on October 3, 2024, and this court passed on hearing the motion until the case was submitted. Chatham argues that (1) Dunklin cannot appeal an order wherein she sought dismissal of her own pending motions with prejudice (i.e., doctrine of invited error); and (2) Dunklin did not designate the motions for reunification counseling and recusal in her notice of appeal, and they do not fall under Arkansas Rule of Appellate Procedure–Civil 2(b)'s designation of "intermediate orders" because they do not affect the final order. The filing of a notice of appeal is jurisdictional; absent an effective notice of appeal, we lack jurisdiction to consider the appeal and must dismiss it. *McMillan v. McMillan*, 2024 Ark. App. 630, 703 S.W.3d 493.

Dunklin's notice of appeal states that she is appealing the April 23, 2024 order "and all interlocutory orders entered prior to the final order" and designated the entire record on appeal. Pursuant to Rule 2(b) of the Arkansas Rules of Appellate Procedure–Civil (2024), "an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." Furthermore, a notice of appeal substantially complies with Arkansas Rule of Appellate Procedure–Civil 3(e) if the notice is clear which order the appellant is appealing, and the notice of appeal was filed timely as to that order; thus, failure to designate the order appealed from is not a fatal defect. *See Emis v. Emis*, 2017 Ark. 52, 508 S.W.3d 886.

In his motion to dismiss, Chatham asks this court to dismiss Dunklin's appeal for lack of jurisdiction because the motion for reunification counseling and motion to recuse are not "intermediate orders" that "affect the final order" dismissing all pending matters with prejudice. We decline to do so. First, Chatham's motion is supported only by a blanket statement and reference to Rule 2(b) without any convincing argument as to why the orders are not intermediate orders that involve the merits and affect the final order. *See Holliman v. Johnson*, 2012 Ark. App. 354, 417 S.W.3d 222 (holding that our appellate courts do not consider arguments without convincing argument or citations to authority). Nonetheless, neither the denial of Dunklin's motion for reunification counseling nor the denial of Dunklin's motion to recuse were appealable orders because they did not conclude the matter or fall under any of the immediately appealable orders outlined in Rule 2(a). In addition, based on the facts of this case, we cannot say that the reunification-counseling and recusal denials do not affect the final order.

Furthermore, the doctrine of invited error is not jurisdictional; thus, it does not require this court to dismiss the appeal. *See Stowell v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 403, 586 S.W.3d 671. Accordingly, we decline to dismiss Dunklin's appeal; Chatham's motion to dismiss is denied.

B. Order Denying Motion for Reunification Counseling

Dunklin maintains that her first point on appeal raises a question of law that is one of first impression in Arkansas: whether a circuit court can deny a parent contact with her child—or even the possibility of contact with her child—when that parent has not been found

9

unfit. In support of her argument, Dunklin maintains that the Fourteenth Amendment's right to due process of law includes the liberty rights of a parent to have and raise his or her children; thus, infringement on a parent's fundamental right to raise children—including the right to interact with one's child—requires a heightened review and a declaration that such parent is unfit. Accordingly, Dunklin maintains that because she has never been deemed "unfit," there is no basis to deny her constitutional right to a parent-child relationship with MC in the absence of clear and convincing evidence to overcome the United States Supreme Court's finding in *Troxel v. Granville*, 530 U.S. 57 (2000), that a relationship with a parent is in a child's best interest.

We agree with Chatham that this argument is not preserved for appellate review. Dunklin made no constitutional argument in her motion for reunification counseling that a finding of parental unfitness by clear and convincing evidence was required for the court to deny the motion. Therefore, Dunklin failed to apprise the circuit court of the argument she now raises on appeal and failed to obtain a ruling. It is well settled that arguments, including constitutional ones, must be raised and ruled on in the circuit court to be preserved for appeal. *H.C. v. Nesmith*, 2025 Ark. App. 59, 705 S.W.3d 880.

C. Order Denying Motion to Recuse

Second, Dunklin contends that the circuit court abused its discretion by denying her motion to recuse. We disagree. On appeal, Dunklin argues that the circuit court's recusal was mandatory because the appearance of bias and impartiality was readily apparent in the court's "continued practice of enforcing its own biased positions against her relationship

10

with her daughter." Additionally, Dunklin contends that the court's unwillingness to rule on her reunification-counseling motion after multiple requests coupled with favorable recommendations by her most recent psychological evaluation and testimony of her reunification counselor formed a basis for her to reasonably question the court's impartiality.

The rule is long established that there is a presumption of impartiality on the part of judges. *City of Rockport v. City of Malvern*, 2010 Ark. 449, 374 S.W.3d 660; *Irvin v. State*, 345 Ark. 541, 49 S.W.3d 635 (2001). The decision to recuse is within the circuit court's discretion, and it will not be reversed absent abuse. *Ferguson, supra.* An abuse of discretion can be proved by a showing of bias or prejudice on the part of the circuit court, and the burden is on the party seeking to disqualify. *Id.* To decide whether there has been an abuse of discretion, this court reviews the record to see if prejudice or bias was exhibited. *Id.* Absent some objective demonstration by the appellant of the circuit judge's prejudice, it is the communication of bias by the judge that will cause us to reverse his or her refusal to recuse himself or herself. *Id.* Whether a judge has become biased to the point that the judge should disqualify himself or herself is a matter to be confined to the conscience of the judge because bias is a subjective matter peculiarly within the knowledge of the circuit judge. *See Hawkins v. State*, 2018 Ark. App. 443, 558 S.W.3d 891.

At the recusal hearing, the circuit court declared that "[it] took its time with a very complicated decision, with a very extensive and tortured record" and "it was not an easy decision to make" because "it will have a permanent impact on the child, one way or another." On appeal, Dunklin takes issue with the circuit court's discussing her past

11

conduct, lack of remorse and responsibility, and MC's desire to have no relationship with Dunklin while ignoring Chatham's "openly blatant conduct of alienating [MC] from her mother." Rather, Dunklin argues that the court should have granted her motion because of the favorable recommendations yielded in her psychological examination and the testimony of the reunification counselor.

We hold that the circuit court did not abuse its discretion by denying Dunklin's recusal motion. In ruling on Dunklin's request for reunification counseling, the circuit court specifically addressed all the evidence presented and explained the weight it assigned and why it did not consider Dunklin's request to be in MC's best interest. The fact that the court's decision was unfavorable to Dunklin and placed concern on Dunklin's past and troubling behavior with MC does not constitute a basis for the court's recusal. Our appellate courts have held that "[j]udges may have—or develop during trial—an opinion or bias, but this does not make the [circuit] judge so biased and prejudiced as to require his disqualification in further proceedings." *Spurlock v. Est. of Ladd*, 2023 Ark. App. 253, at 9, 669 S.W.3d 214, 221. Because Dunklin failed to satisfy her burden of overcoming the presumption of impartiality, we affirm the circuit court's order denying Dunklin's motion to recuse.

## V. *Conclusion*

For the above-stated reasons, we affirm the circuit court's order denying Dunklin's motion for reunification counseling and order denying Dunklin's motion to recuse.

Affirmed; motion to dismiss denied.

THYER and MURPHY, JJ., agree.

*Lancaster Law Firm, PLLC,* by: *Clinton W. Lancaster,* for appellant.

*Robinson, Zakrzewski & Taylor, P.A.,* by: *Luke Zakrzewski*; and *Sara M. Hartness Law Office,* by: *Sara M. Hartness,* for appellee.